**Bruce GLANDEN, Claimant Below, Appellant,**

v.

**LAND PREP, INC., Employer Below, Appellee.**

No. 513, 2006.

Supreme Court of Delaware.

Submitted: Jan. 17, 2007.
Decided: Feb. 3, 2007.

HOLLAND, Justice.

The claimant-appellant, Bruce Glanden ("Glanden"), appeals from a Superior Court judgment that affirmed the Industrial Accident Board's denial of his Petition to Determine Additional Compensation Due. Glanden has raised the following arguments on appeal: first, the Industrial Accident Board ("IAB") erred as a matter of law, because the doctrines of *res judicata* and collateral estoppel preclude reconsideration of the IAB's prior rulings regarding Glanden's injuries; second, the IAB erred by failing adequately to articulate its permanent impairment determination; third, no substantial evidence supports the IAB's decision because the IAB made incorrect findings of fact, improperly relied on hearsay medical records, and disregarded undisputed medical testimony; and fourth, the IAB incorrectly determined that a letter from the employer was a settlement offer.

We have determined that the Superior Court correctly held the IAB did not error as a matter of law and that there is substantial evidence to support the IAB's decision. Therefore, the judgment of the Superior Court must be affirmed.

### Facts

Glanden was injured at work in March 2001 when he was crushed between a truck and an excavation machine and sustained serious injuries to his torso, clavicle and elbow. Glanden was airlifted to Washington Hospital where he received blood transfusions, was intubated, put into an artificial coma, and placed on a ventilator. Glanden underwent several surgeries to repair the damage to his lungs, ribs, elbow and liver.

At the time of the accident, Glanden was employed by the appellee, Land Prep, Inc. Land Prep paid total disability compensation to Glanden until the end of December 2001, but thereafter filed two Petitions to

Terminate Benefits. The IAB denied both petitions. The IAB found that Claimant suffered from fatigue, loss of concentration and memory issues. Accordingly, the IAB determined that Land Prep had failed to meet its burden of proving Glanden's ability to work.

In July 2005, Glanden filed a Petition to Determine Additional Compensation Due for permanent impairment to the brain as a result of the industrial accident. Glanden sought twenty to fifty percent permanent impairment benefits. Land Prep argued that no permanent impairment to Glanden's brain had resulted from the accident. Glanden testified at the hearing, as did several physicians.

The relevant medical testimony was by Drs. Kishor Patil, Stephen Rodgers and Lanny Edelsohn. Dr. Patil, a board-certified neurologist, who testified on behalf of the Claimant, opined that Glanden had sustained a fifty percent permanent impairment to the brain. Having considered Glanden's attention span, object recall, hyper-somnia, fatigue, emotional disturbances, social inhibition, and net cognitive impairments, Dr. Patil concluded that as a result of the trauma Glanden's brain was briefly deprived of oxygen, which caused a permanent impairment.

Dr. Rodgers, who was board-certified in occupational medicine, also testified on Glanden's behalf. Dr. Rodgers first evaluated Glanden while he was in the induced coma at Washington Hospital and again in December of 2002. Based on those examinations and his review of Glanden's medical records, Dr. Rodgers opined that although there were no objective findings of brain damage, the accident caused Glanden to suffer a twenty percent permanent impairment to the brain.[1]

Dr. Edelsohn, also a board certified neurologist, testified on behalf of Land Prep. Having examined Glanden on five separate occasions, Dr. Edelsohn concluded that he had not suffered any brain damage related to the industrial accident. Dr. Edelsohn testified that there were no objective findings of brain injury. In his opinion, Glanden's mental and emotional symptoms were more likely caused by the side effects of his medication.

Dr. Edelsohn strongly disagreed with Dr. Patil's fifty percent impairment diagnosis. According to Dr. Edelsohn, a person with fifty percent permanent impairment would need constant supervision, would have difficulty with personal hygiene and would likely be wheel-chair bound. Glanden was also able to form new memories, a function that those with brain damage are unable to perform.

The IAB found Dr. Edelsohn's testimony to be the most persuasive. It concluded that Glanden did not sustain his burden of proving a 20 to 50 percent permanent impairment of the brain, and denied Glanden's Petition for Additional Compensation Due. On appeal, the Superior Court affirmed the IAB's decision.

### Standard of Review

In an IAB appeal, the reviewing court must determine whether the IAB's decision is supported by substantial evidence[2] and is free from legal error.[3] The appellate court "does not sit as a trier of fact with authority to weigh the evidence, determine questions of credibility, and make its own factual findings and conclu-

---

1. In evaluating Glanden, Drs. Patil and Rodgers relied on the *AMA Guides to the Evaluation of Permanent Impairment 5th ed.*

2. "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Oceanport Indus. v. Wilmington Stevedores,* 636 A.2d 892, 899 (Del.1994).

3. *Johnson v. Chrysler Corp.,* 213 A.2d 64, 66 (Del.1965).

sions." Those functions are vested in the IAB.[4] Questions of law are reviewed *de novo*.[5] Absent errors of law, however, the standard of appellate review of the IAB's decision is abuse of discretion.[6]

### No Res Judicata or Collateral Estoppel

■ Glanden first claims that the IAB erred as a matter of law because the doctrines of *res judicata* and collateral estoppel bar relitigation of his injuries.[7] Specifically, Glanden asserts that "[b]ecause the Board determined in two prior proceedings the nature, extent and cause of [his] injuries, the Board cannot now revisit those issues of fact and conclusions of law." In the two prior hearings, the IAB denied Land Prep's Petition to Terminate Benefits. The IAB determined that Glanden's complaints of fatigue and decreased visual and mental acuity were substantiated by the medical testimony.

In this proceeding, however, the issue was whether there was permanent impairment caused by a brain injury resulting from the industrial accident.[8] The previous IAB hearings addressed Claimant's ability to return to work, but the IAB made no finding or determination of a

brain injury. Because the IAB did not previously decide whether any brain injury or permanent impairment occurred as a result of the accident, neither *res judicata* nor collateral estoppel barred the current proceeding.

### Permanent Impairment Findings

■ Glanden's second argument is that the IAB's decision should be reversed based on *Lindsay v. Chrysler Corp.*, where the Superior Court determined that the IAB had erred as a matter of law by "not articulat[ing] a standard for determining permanence or otherwise address[ing] the issue." [9] Glanden cites *Lindsay* for the proposition that where, as here, there is substantial medical evidence and the experts disagree, "the need for clearly articulated findings is crucial." [10] *Lindsay*, however, is distinguishable, because there, the IAB's decision amounted to a single, conclusory paragraph as to why it found the employer's physician's testimony more persuasive. Here, the IAB's decision included over five pages of well reasoned findings of fact and conclusions of law that specifically addressed the issue of permanent impairment.[11]

---

**4.** *Id.*

**5.** *Munyan v. Daimler Chrysler Corp.*, 909 A.2d 133, 137 (Del.2006).

**6.** *Digiacomo v. Bd. of Pub. Educ.*, 507 A.2d 542, 546 (Del.1986).

**7.** In *Betts v. Townsends, Inc.*, this Court defined both *res judicata* and collateral estoppel:
Under the doctrine of *res judicata,* a party is foreclosed from bringing a second suit based on the same cause of action after a judgment has been entered in a prior suit involving the same parties. Similarly, where a court or administrative agency has decided an issue of fact necessary to its decision, the doctrine of collateral estoppel precludes relitigation of that issue in a subsequent suit or hearing concerning a different claim or cause of action involving a party to the first case.

765 A.2d 531, 534 (Del.2000).

**8.** The IAB stated, "[p]reviously the Board simply found that Claimant's history of concentration and memory problems were substantiated by the medical testimony of Dr. Viloria. In the current matter before the Board, no one denied that Claimant has concentration and memory problems, the issue involves whether those problems are caused by a brain injury from the industrial accident." *Glanden v. Land Prep, Inc.*, IAB Hearing No. 1187374 at 19 (Dec. 5, 2005).

**9.** 1994 WL 750345 at *4 (Del.Super. Dec. 7, 1994).

**10.** *Id.* at *3.

**11.** For example, the IAB stated that it was persuaded that Dr. Edelsohn had not found

■ The IAB accepted Dr. Edelsohn's testimony that Glanden's fatigue and poor concentration were more likely caused by his large doses of pain medication. "[T]he Board is free to choose between conflicting medical expert opinions" which will constitute substantial evidence for purposes of appeal.[12] Accordingly, Glanden's second argument is without merit.

### Hearsay Evidence Used Properly

Glanden's third argument is that the IAB abused its discretion and committed plain error by relying upon inadmissible hearsay statements contained in the Washington Hospital records to establish a pivotal issue. In hearings before the IAB, the rules of evidence are relaxed, because of the nature of the IAB proceedings and in order to comply with the spirit of the worker's compensation statute.[13] Glanden's argument focuses on one statement in the IAB's decision that: "Based on the medical records, no one at the Washington Hospital Center or at the rehabilitation center ever suggested that Claimant had mental or cognitive problems."[14]

Glanden contends that because none of the doctors who wrote those medical reports testified, the IAB cannot rely on them to determine a pivotal issue in the permanency claim. He cites *Reliable Corp. v. Sierra* for the proposition that the IAB's findings on "critical medical issues cannot simply be based upon the reading of the record of a doctor's report...."[15] As the Superior Court recognized, however, the IAB relied on the Washington Hospital records only to determine if Glanden had been diagnosed with any cognitive problems immediately following his injury.

The medical records were relevant only because Dr. Edelsohn had testified that patients with brain injuries present deficits in the beginning of the injury and, thereafter, slowly improve. Dr. Edelsohn's opinion was not based solely on his review of the Washington Hospital's medical records. Dr. Edelsohn's testimony was based on several factors, including his own clinical findings and observations after examining Glanden on five separate occasions. Therefore, those records are not "pivotal" to his ultimate medical opinion.

Moreover, Glanden's reliance on *Reliable Corp.* is misplaced. No one read any of the Washington Medical reports into the record. Rather, Dr. Edelsohn was asked to comment on medical records he had reviewed in formulating his opinion. Thus, no hearsay evidence was actually introduced at the IAB hearing.

### Claimant Refused Reasonable Medical Treatment

■ Glanden next argues that the IAB abused its discretion and committed reversible error by finding that Glanden refused to undergo testing for sleep apnea or blood tests to rule out anemia. Although it may be inaccurate to state that Glanden "refused" the testing, there is record evidence that the tests were recommended

any evidence of brain problems during his neurological evaluations over the course of five examinations. The Board also noted that Dr. Edelsohn is a neurologist with extensive experience in treating people with brain disorders and brain damage. The IAB also stated why it considered Dr. Patil's opinion flawed, including the fact that he was an evaluating physician, not a treating physician, and his exaggerated conclusion that Glanden was fifty percent impaired.

12. *DiSabatino Bros. Inc., v. Wortman,* 453 A.2d 102, 106 (Del.1982).

13. *Morris v. Gillis Gilkerson, Inc.,* 1995 WL 562132 at *5 (Del.Super. Aug. 11, 1995).

14. *Glanden v. Land Prep, Inc.,* IAB Hearing No. 1187374 at 21 (Dec. 5, 2005).

15. *Reliable Corp. v. Sierra,* 1999 WL 743879 at *3 (Del.Super. Aug. 31, 1999).

and that Land Prep agreed they would be compensable.

Even if that reference was erroneous, it was not probative of the IAB's ultimate determination that Glanden did not suffer permanent brain impairment. The tests would only have been used to confirm the differential diagnoses of sleep apnea or anemia. The Superior Court acknowledged that the results of such tests may give rise to an additional compensation claim. The absence of those tests does not, therefore, constitute reversible error.

### Medical Testimony Considered

Glanden next claims that the IAB erred as a matter of law by disregarding Dr. Rodgers' undisputed medical testimony that Glanden was confused. That assertion is not supported by the record. As the Superior Court noted, the experts for both parties agreed that Glanden was confused. However, the IAB accepted Dr. Edelsohn's testimony that, although Glanden was confused, he was not permanently impaired. It is well settled that the IAB is free to choose between conflicting medical testimony, and that the expert testimony which is relied upon will constitute substantial evidence for purposes of appeal.[16]

### Settlement Offer 19 Del. C. § 2320(10)(b) Is Moot

■ Glanden's final argument is that the IAB erred by incorrectly determining that Land Prep's September 23, 2005, let-ter—wherein Land Prep acknowledged its responsibility for medical treatment by a thoracic surgeon to repair Glanden's windpipe—constituted an offer of settlement. Specifically, Glanden argues that the letter did not comport with 19 *Del. C.* § 2320(10)(b).[17] Glanden's Petition for Additional Compensation Due requested a decision on two issues—whether he had suffered permanent brain impairment, and whether he would be authorized for thoracic surgery paid for by Land Prep. At the hearing, however, Glanden testified that he no longer intended to see a thoracic surgeon because that health issue had been resolved.[18] Because the IAB determined that Glanden does not have permanent brain impairment, and Glanden had withdrawn his claim for thoracic surgery, the Superior Court correctly held that Glanden's final argument is moot.

### Conclusion

The judgment of the Superior Court is affirmed.

**16.** *Reese v. Home Budget Ctr.,* 619 A.2d 907, 910 (Del.1992).

**17.** Section 2320(10)(b) states, "[if] multiple issues are pending before the Board, said offer of settlement shall address each issue pending and shall state explicitly whether or not the offer on each issue is severable. The written offer shall also unequivocally state whether or not is includes medical witness fees and expenses and/or late cancellation fees relating to such medical witness fees and expenses."

**18.** Claimant previously had difficulty eating because he had a feeling that he was choking. A change in Glanden's eating routine has resolved the issue.