IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| AFL NETWORK SERVICES, | § | |
| | § | No. 238, 2016 |
| Appellant Below- | § | |
| Appellant, | § | Court Below: Superior Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | |
| THOMAS HEGLUND, | § | CA No. N15A-09-002 |
| | § | |
| Appellee Below- | § | |
| Appellee. | § | |

Submitted: October 5, 2016
Decided: November 15, 2016

Before **HOLLAND**, **VALIHURA**, and **VAUGHN**, Justices.

### O R D E R

This 15th day of November 2016, upon consideration of the parties' briefs and the record of the case, it appears that:

1. AFL Network Services ("AFL") appeals from a Superior Court order affirming an Industrial Accident Board ("the Board") decision to grant Thomas Heglund's ("the claimant") Petition to Determine Additional Compensation Due. The sole question before the Board was whether proposed surgery was reasonable and necessary. AFL contends that the Superior Court committed reversible error by impermissibly weighing the evidence, determining questions of credibility and

making factual findings. In other words, AFL contends that the Superior Court exceeded the scope of review.

2. On March 29, 2004, the claimant suffered an acknowledged compensable work injury to his cervical spine while employed by AFL. He subsequently underwent two cervical spine surgeries on June 17, 2004 and November 16, 2011. He sought to have a subsequent cervical spine surgery and filed a Petition to Determine Additional Compensation Due for that surgery on April 2, 2013.

3. A hearing was held before a Workers' Compensation Hearing Officer, sitting as the Board, on September 19, 2013. The claimant presented testimony from Dr. Bikash Bose, a board-certified neurosurgeon, who started treating the claimant on November 15, 2010. The disputed surgery that Dr. Bose was proposing was described as a posterior exploration, a C2-3 decompression, fusion and revisions of the T2 and C6 screws. Dr. Bose wanted to surgically explore the previous fusion sites and ensure the T2 screws are not loose and then incorporate extending the decompression and fusion to C2. Dr. Bose testified that the proposed surgery should reduce the claimant's pain medications.

4. AFL presented testimony from Dr. Scott Rushton, who is board-certified in orthopedic surgery. Dr. Rushton testified that the proposed surgery was not reasonable or necessary. In summary, Dr. Rushton explained that while the

2

diagnostic test findings may support a surgical approach, the proposed surgery will likely fail and will likely increase the claimant's disability. He explained that the claimant has a cervical thoracic kyphosis that must be addressed in order for the claimant to have a chance of a successful surgical outcome. Such condition, however, cannot be addressed by a posterior-only approach. The claimant's 2012 surgery failed because the claimant's cervical thoracic kyphosis was not addressed. Dr. Rushton stated that the cervical thoracic kyphosis is a deformity causing the claimant's symptomatology. Not only did the claimant not benefit from the 2011 surgery, the 2011 surgery likely worsened the claimant's condition and symptoms; the proposed surgery will likely do the same.

5. On November 5, 2013, the Hearing Officer denied the claimant's Petition, finding that the claimant failed to demonstrate the reasonableness and necessity of the proposed surgery by a preponderance of the evidence. The Hearing Officer found the opinions of Dr. Rushton to be more credible than those of Dr. Bose. In accepting Dr. Rushton's testimony over the testimony of Dr. Bose, the Hearing Officer analyzed the testimony of each doctor and, in summary, made observations which included the following: Dr. Bose, who performed the 2011 surgery, did so to decrease the claimant's medications, but there was no evidence that such a decrease occurred; that after the 2011 surgery, the claimant's symptoms returned and soon became worse;

3

that another of the claimant's doctors, Dr. Rastogi, had recommended against the 2011 surgery; that Dr. Rushton testified that surgery cannot be successful unless the claimant's kyphosis is addressed; that the claimant's kyphosis cannot be addressed by a solely posterior approach, which was the approach of the proposed surgery; that Dr. Bose recommended the surgery to reduce the claimant's medications, but Dr. Bose could not identify the claimant's medications without referring to a medical record; Dr. Bose admitted that he does not anticipate that the proposed surgery would increase the claimant's functional ability; and that the additional fusion contemplated would decrease the claimant's movement in the cervical spine.

6. The Hearing Officer concluded that it did not appear from the evidence that a third surgery would be successful. In her concluding paragraph, she stated as follows:

> Dr. Bose represented that the 2011 surgery was initially a success because Claimant experienced a benefit for a few months. I disagree. By March 2012, four months after the surgery, Claimant complained of returning symptoms that again progressed to a condition worse than Claimant's condition prior to the 2011 surgery. As. Dr. Rushton testified, Claimant's symptoms progressed despite the surgery in 2004 and despite the surgery in 2011. It does not appear by the evidence that a third surgery will be successful. Claimant may require surgery to fix any screws that may be loose but the surgery as proposed does not

4

appear to be a reasonable or necessary approach to correcting such problems if they exist.[1]

7. On November 15, 2013, the claimant filed a Notice of Appeal. On July 3, 2014, the Superior Court reversed and remanded the case back to the Board. The Superior Court reversed the Board's decision, stating that "[t]he Board's conclusion that the proposed surgery to repair the T2 screws and C6 screw was not reasonable and necessary does not logically follow the factual findings."[2] In substance, the Superior Court concluded that Dr. Bose had testified that the T2 and C6 screws were loose, that Dr. Rushton agreed with that, and that the Board found that the claimant required surgery to fix the screws.

8. On remand, the case was presented to the same Hearing Officer, sitting as the Board, on the same evidence and without further argument from counsel. The Hearing Office issued a second decision on January 16, 2015. The Hearing Officer again found the opinions of Dr. Rushton to be more credible than those of Dr. Bose, and, therefore, determined that the proposed surgery was not reasonable and necessary.

9. In doing so, the Hearing Officer noted that Dr. Rushton testified that Heglund's primary complaints of neck pain and headaches have a poor chance of

---

[1] *Heglund v. AFL Network Servs.*, No. 1249763, at 17 (Del. I.A.B. Nov. 5, 2013).
[2] *Heglund v. AFL Network Servs.*, 2014 WL 3510232, at *3 (Del. July 3, 2014).

being improved with any type of surgery and have unpredictable surgical outcomes; that the proposed surgery would not address the underlying problem of cervical thoracic kyphosis; that it would be unreasonable to pursue a C2-3 fusion from an isolated posterior approach because it will worsen the claimant's condition; that not only does Dr. Bose's proposed surgery have a high risk of failure but there are very high risks that it will increase the claimant's disability and pain; will increase the claimant's immobility; and further compromise the claimant's clinical status. Dr. Rushton opined that the claimant may not need surgery, but the claimant especially should not pursue the surgery Dr. Bose was proposing.

10. On January 29, 2015, the claimant filed a Notice of Appeal. On July 23, 2015, the Superior Court again reversed and remanded the case back to the Board. In the Superior Court's Memorandum Opinion, it again found that the Board's conclusion that the surgery was not reasonable and necessary "d[id] not logically follow the factual findings."[3] Additionally, the Superior Court instructed the Board "to provide Appellant additional compensation for the additional surgery consistent with the Board's own findings that the T2 and C6 screws were loose, that the loose

---

[3] *Heglund v. AFL Network Servs.*, 2015 WL 4498813, at *2 (Del. July 23, 2015).

6

screws contribute to Appellant's pain, that surgical tightening and/or replacement of those screws is requires and is reasonable and necessary to reduce Appellant's pain."[4]

11. Subsequently, on August 6, 2015, the Board issued an opinion granting the claimant's Petition to allow for the additional surgery pursuant to the Superior Court's July 23, 2015 opinion. On September 3, 2015, AFL filed an Appeal. On April 18, 2016, the Superior Court affirmed the Board's decision. On May 12, 2016, AFL filed this Appeal challenging the Superior Court's July 3, 2014 and July 23, 2015 decisions.

12. The only issue before the Court is whether the Superior Court committed reversible error by substituting its judgement for the Board's. On an appeal of the Board's decision, both this Court and the Superior Court are to evaluate whether the Board's "decision is supported by substantial evidence and is free from legal error."[5] Neither this Court nor the Superior Court are to "sit as a trier of fact with authority to weigh the evidence, determine questions of credibility, and make its own factual findings and conclusions."[6] Questions of law are reviewed *de novo*.[7] Absent errors of law, the standard of review is abuse of discretion.[8] The Board has abused its

---

[4] *Id.*
[5] *Glanden v. Land Prep, Inc.*, 918 A.2d 1098, 1100 (Del. 2007).
[6] *Id.*
[7] *Id.* at 1101.
[8] *Id.*

7

discretion only when its decision has "exceeded the bounds of reason in view of the circumstances."[9]

13. A Board decision should be affirmed unless there is no substantial evidence to support it.[10] Substantial evidence exists when there is "such evidence as a reasonable mind might accept as adequate to support a conclusion."[11] Additionally, the Board "may adopt the opinion testimony of one expert over another; and that opinion, if adopted, will constitute substantial evidence for purposes of appellate review."[12] The were no issues of law presented in this case. The only question was whether the proposed surgery was reasonable and necessary.

14. The Superior Court concluded that the Board's decision did "not logically follow the factual findings."[13] Specifically, the Superior Court found that "the Board Decision accepted Dr. Bose's opinion that the T2 and C6 screws were loose, contributing to Appellant's pain and requiring surgical tightening and/or replacement of those screws as reasonable and necessary to reduce Appellant's pain."[14] However, this statement is an inaccurate representation of the Board's findings.

---

[9] *Person-Gaines v. Pepco Holdings*, 981 A.2d 1159, 1161 (Del. 2009).
[10] *Id.*
[11] *Id.*
[12] *Id.*
[13] *Heglund,* 2015 WL 4498813, at *2; *Heglund*, 2014 WL 3510232, at *3.
[14] *Heglund*, 2014 WL 3510232, at *3.

15. The Board in both the November 5, 2013 and January 16, 2015 decisions determined "the opinions of Dr. Rushton to be more credible than the opinions of Dr. Bose."[15] It is well within the Board's authority to make determinations of credibility. Specifically, the Board found Dr. Bose, The claimant's treating physician, to be unaware of the claimant's overall condition, daily activities of living, and current medications.

16. Here, the Board chose to adopt Dr. Rushton's opinion that the surgery as proposed would not address the claimant's underlying problems. Specifically, in the January 2015 Decision, the Board chose to adopt Dr. Rushton's opinion that the claimant may not need surgery and his opinion that if he does require surgery, he should not pursue the proposed surgery as it does not address the underlying problem of cervical thoracic kyphosis.

17. Furthermore, at no time did the Board conclude that the T2 and C6 screws were loose. The Board also did not conclude that surgical tightening and/or replacement of those screws was necessary and reasonable. At the conclusion of the Board's November 2013 opinion, the Board stated, "[c]laimant *may* require surgery to fix any screws that *may* be loose but that surgery as proposed does not appear to

---

[15] *Heglund v. AFL Network Servs*, No. 1249763, at 14 (Del. I.A.B. Nov. 5, 2013); *Heglund v. AFL Network Servs*, No. 1249763, at 14 (Del. I.A.B. Jan. 16, 2015).

9

be a reasonable or necessary approach to correcting such problems if they exist."[16] This statement is the closest the Board came to suggesting that the T2 and C6 screws were loose and that they required surgical tightening/replacement.

18. The proposed surgery involved a posterior exploration, a C2-3 decompression and fusion. Fixing any screws that maybe loose, if any, was an additional purpose. The Superior Court seems to have focused only on the screws. Dr. Rushton's testimony, taken as a whole, clearly provides that the proposed surgery, taken as a whole, was not a reasonable approach to the claimant's condition.

19. Therefore, the Superior Court committed reversible error when it reversed and remanded the Board's decisions on November 5, 2013 and January 16, 2015. The Board weighed the evidence, determined credibility, and made factual findings which were supported by substantial evidence.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is REVERSED.

BY THE COURT:

/s/ James T. Vaughn, Jr.
Justice

---

[16] *Heglund v. AFL Network Servs*, No. 1249763, at 17 (Del. I.A.B. Nov. 5, 2013) (emphasis added).