# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| QUALITY ASSURED INC., T/A SERVICEMASTER OF BRANDYWINE, | ) ) ) | |
| Appellant/Employer-Below, | ) ) | C.A. No.: N22A-05-012 SKR |
| v. | ) ) | |
| BERNARD DAVID, | ) ) | |
| Appellee/Claimant-Below. | ) | |

*Upon Appeal from the Industrial Accident Board's Decision Dated 05/09/2022*:
**AFFIRMED**.

Nicholas Bittner, Esq., Attorney for Appellant/Employer-Below.

David Crumplar, Esq., Attorney for Appellee/Claimant-Below.

**Rennie, J.**

## MEMORANDUM OPINION AND ORDER

Before the Court is an appeal from a decision[1] of the Industrial Accident Board ("IAB") which granted compensation for additional medical expenses allegedly incurred as a result of a 2008 work-related injury. For the reasons set forth below, the IAB's decision is **AFFIRMED**.

---

[1] *David v. Quality Assured Inc.*, IAB Hearing No. 1332427 (May 9, 2022) [hereinafter the "IAB Decision"].

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A.    Nature and Stage of the Proceedings

On December 12, 2008, while employed at Quality Assured Inc., t/a ServiceMaster of Brandywine ("Employer"), Bernard David ("Claimant") injured his neck and low back in a compensable work accident.[2] Claimant has been engaged in active treatment with his low back since the accident,[3] which includes consistent epidural injections.[4]

On November 10, 2021, Claimant filed a petition to the IAB seeking payment of medical expenses for treatment rendered at Christiana Spine Center, incurred from September 4, 2020 and ongoing, comprised entirely of injections directed to his low back.  On April 25, 2022, the IAB held a hearing on Claimant's petition.  On May 9, 2022, the IAB issued its decision granting the petition.[5]  On May 23, 2022, Employer filed a timely appeal to this Court.  The briefing is now complete and this matter is ripe for the Court's consideration and decision.

### B.    Summary of the Evidence

The evidence presented at the IAB hearing includes live testimony from Claimant himself and testimony by deposition from both parties' medical experts.

---

[2] IAB Decision at 2.
[3] Claimant has also received treatment for his neck.  The instant matter, however, concerns solely Claimant's low back.
[4] *Id.*
[5] The IAB also granted Claimant medical witness fees and attorney's fees.

2

Dr. Tony Cucuzzella, who is Claimant's treating physician and board-certified in physical medicine, rehabilitation and pain management, testified for Claimant. Dr. Cucuzzella commenced treating Claimant in February 2009, which was a couple months after the work incident, and has been seeing Claimant every several months ever since.[6] Dr. Cucuzzella testified that the treatment he has provided to Claimant regarding his lumbar spine has not changed since 2009, which consists of typically one to three epidural injections per year.[7] As to recent treatment, Dr. Cucuzzella testified that Claimant had one injection in 2019, three in 2020, and three in 2021.[8]

Dr. Cucuzzella opined that the injections received by Claimant are causally related to the 2008 work incident because Claimant had not had any lumbar spine injections before the incident and has been consistently receiving them at relatively the same frequency since the incident.[9] Dr. Cucuzzella also opined that the injections are reasonable and necessary because they provide Claimant with relief from incapacitating pain and they help Claimant function.[10] Specifically, the injections decrease inflammation in the spine caused by disc protrusion or osteophytic bone spurring.[11] Dr. Cucuzzella further testified that the need for the

---

[6] Cucuzzella Deposition Transcript [hereinafter "Cucuzzella Depo."] at 7:17-19, 8:24-9:2.
[7] *Id.* at 9:9-14.
[8] *Id.* at 10:13-15.
[9] *Id.* at 10:19-22.
[10] *Id.* at 12:22-13:1.
[11] *Id.* at 11:1-4.

injections is not age-related or due to degenerative conditions because the frequency at which Claimant has been receiving the injections has not increased over time. [12]

Claimant also testified on his own behalf. Claimant, who is now seventy-two years old and was fifty-eight at the time of the work incident, stated that he was in "excellent" health before the work incident and that he had not been involved in any prior work or motor vehicle accidents.[13] Claimant stated that he started treating with Dr. Cucuzzella and receiving injections in 2009. Claimant testified that he only seeks injections when "the pain is bad" and the injections help relieve the pain to a level of two, on a scale of one to ten.[14] When asked how often he receives an injection, Claimant testified that "by law I can only get maybe three a year."[15]

Dr. Scott Rushton, a board-certified orthopaedic spine surgeon, testified on behalf of Employer.[16] Dr. Rushton opined that the injections received by Claimant are not causally related to the work incident but rather attributed to Claimant's pre-existing degenerative conditions. Dr. Rushton specifically discussed the several MRIs[17] conducted on Claimant's lumbar spine. Dr. Rushton testified that the first MRI, which was done on December 31, 2008, demonstrated mild degenerative

---

[12] *Id.* at 11:21-12:1.
[13] IAB Hearing Transcript [hereinafter "Hr'g Tr."] at 11:19-25.
[14] *Id.* at 15:6-8, 15:18-19, 18:9-12.
[15] *Id.* at 15:20-23.
[16] Dr. Rushton examined Claimant regarding his lumbar spine on February 18, 2022. According to Claimant, the exam lasted about ten minutes. *Id.* at 16:20-21.
[17] Claimant had five MRIs in 2008, 2010, 2014, 2017, and 2019, respectively. *See* IAB Decision at 5.

changes, which included mild disk bulges and a small disk protrusion causing mild canal and foraminal stenosis and annular fissures.[18] Dr. Rushton also testified that the findings of the several MRIs are consistent with a typical degenerative continuum and did not demonstrate any traumatic structural change to indicate an aggravation that could result from a traumatic event.[19] In addition, Dr. Rushton pointed out that Claimant is going through radiation treatments for prostate cancer, which may cause injuries and pain complaints to the musculoskeletal system and, therefore, be a separate cause of Claimant's low back pain.

Dr. Rushton also opined that the injections are not reasonable or necessary treatment options to address Claimant's complaints. He explained that the type of injections received by Claimant generally should be targeting symptoms of radicular pain radiating into a dermatomal distribution that can be clinically correlated to an objective exam and/or MRI finding.[20] A simple statement of pain in the leg, according to Dr. Rushton, does not support a definitive diagnosis of radiculopathy or require spine injections.[21] Dr. Rushton pointed out that there was no radiating pain down into either extremity noted during the doctor's visits that Claimant had both before and after the September 4, 2020 injection.[22] Dr. Rushton acknowledged

---

[18] Rushton Deposition Transcript [hereinafter "Rushton Depo."] at 9:17-24.
[19] *Id.* at 12:8-11, 12:19-22, 13:19-23, 14:9-11, 14:13-19.
[20] *Id.* at 15:18-21.
[21] *Id.* at 16:16-21, 17:3-6.
[22] *Id.* at 17:23-18:1.

that, during the February 18, 2022 physical exam, Claimant reported fairly extensive symptoms, including beltline pain, pain in the right hip radiating down the back of the lower extremity, tingling in the right leg, left lower extremity pain, and left lower extremity pins and needles.[23] Dr. Rushton, however, stated that the physical exam he conducted on Claimant's lumbar spine was objectively normal and there was no evidence of reproducible radiculopathy.[24] Dr. Rushton commented that he could not correlate the nature and level of pain reported by Claimant to any objective physical exam findings or to the MRI scans.[25]

### C. IAB Decision

The IAB accepted the testimony of Dr. Cucuzzella over that of Dr. Rushton and concluded that Claimant is entitled to compensation for the medical expenses with respect to the injections from September 4, 2020 and ongoing. The IAB found that the injections are causally related to the work incident, relying upon the fact that Dr. Cucuzzella has been overseeing Claimant's care and administering injections to Claimant's low back since 2009, which was shortly after the work incident, and that the frequency of the injections has not increased with Claimant's age. The IAB also cited as a fact supporting its conclusion that Employer had paid for injections

---

[23] *Id.* at 20:20-21:1.
[24] *Id.* at 21:11-22:11.
[25] *Id.* at 22:24-23:4.

administered prior to those at issue.[26]   In determining that the injections are reasonable and necessary, the IAB primarily relied upon Claimant and Dr. Cucuzzella's testimony that Claimant only seeks injections when his pain is unbearable and that the injections relieve him of pain and help him to function.[27]

## II.  STANDARD OF REVIEW

This Court has appellate jurisdiction over final agency decisions under 29 *Del. C.* § 10142.  On appeal from an IAB decision, the Court's review is limited to determining whether the IAB's conclusions are supported by substantial evidence and are free from legal error.[28] Questions of law are reviewed *de novo*.[29] Substantial evidence is "such relevant evidence that a reasonable mind might accept as adequate to support a conclusion."[30]  This Court will not "weigh the evidence, determine questions of credibility, or make its own factual findings."[31] Moreover, the Court

---

[26] The exact language in the IAB's written decision is that "There is no evidence that Employer has not paid for such injections."  IAB Decision at 10.  Because this statement is made in the context of IAB discussing Claimant starting to receive injections since 2009, and because the injections from September 4, 2020 and thereafter are in dispute here, the Court assumes that the IAB was referring to injections prior to 2020 when it stated that Employer had paid for those injections.

[27] The IAB specifically commented that "[i]f the injections were as inappropriate as Dr. Rushton has testified, Claimant would not be experiencing such improvement."  *Id.*

[28] *Glanden v. Land Prep, Inc.*, 918 A.2d 1098, 1100 (Del. 2007).

[29] *Person-Gaines v. Pepco Holdings, Inc.*, 981 A.2d 1159, 1161 (Del. 2009).

[30] *Id.* (quoting *Olney v. Cooch,* 42 A.2d 610, 614 (Del. 1981)).  *See also Sheppard v. Allen Family Foods*, 279 A.3d 816, 826 (Del. 2022) (internal citations omitted) ("It is 'more than a scintilla but less than a preponderance of the evidence.'").

[31] *Person-Gaines*, at 1161 (citing *Johnson v. Chrysler Corp.*, 213 A.2d 64, 66-67 (Del. 1965)).

must "take due account of the experience and specialized competence" of the IAB and the purposes of the Workers' Compensation Act.[32]

### III.  DISCUSSION

Under the Delaware Workers' Compensation Act, an employee is entitled to receive compensation for injuries sustained in accidents "arising out of and in the course of employment."[33]   The injured employee has the burden to prove by a preponderance of the evidence that the injury was caused by the work accident.[34] When an employee has suffered an injury causally related to a work accident, he or she is entitled to payment of expenses incurred for "reasonable and necessary" medical services directly related to that injury.[35]   In the instant appeal, Employer contends that the IAB committed both errors of fact and law, by applying a lesser burden of proof to Claimant, relying upon a legal theory not raised by any party, ignoring uncontradicted expert testimony and accepting factually insufficient testimony without a medical or scientific basis.  The Court will address each of these contentions in turn.

---

[32] 29 *Del. C.* § 10142.
[33] 19 *Del. C.* § 2304.
[34] *Histed v. E.I. DuPont de Nemours & Co.*, 621 A.2d 340, 343 (Del. 1993) (internal citations omitted).
[35] 19 *Del. C.* § 2322.

**A.    There is no evidence in the record that the IAB applied a lesser burden of proof than required to Claimant's petition.**

Employer's first argument on appeal is that the IAB applied a lesser standard than required for Claimant's burden of proof.  Specifically, Employer takes issue with one sentence in the IAB's written decision, where the IAB stated that "Claimant's burden is relatively low."[36]  Employer cited a recent case from this Court, *Fowler v. Perdue Farms, Inc*,[37] where the Court found that the IAB committed a reversible legal error by applying essentially a "beyond any reasonable doubt" standard in its analysis of facts, despite the IAB's acknowledgement that the preponderance of the evidence standard should apply.[38]

Here, the Court does not find that the IAB applied a less stringent legal standard to Claimant's burden of proof that renders its decision reversible.  First, as correctly pointed out by Employer, the IAB expressly stated that the applicable standard of proof is by a preponderance of the evidence.[39]  In addition, unlike *Fowler*, nothing in the IAB's decision suggests that it *actually* applied a different

---

[36] *See* IAB Decision at 10.

[37] 2022 WL 807327 (Del. Super. Mar. 16, 2022).

[38] In *Fowler*, one of the issues in dispute was whether the employee claimant contracted Covid-19 from his workplace.  The IAB acknowledged that the applicable standard of proof is by a preponderance of the evidence.  However, in its analysis of the underlying facts, the IAB found that "there are a tremendous number of places where a person can contract Covid-19" and that "no one can say for sure where [the employee] contracted [Covid-19]."  The Court found that the "for sure" language shows the IAB was essentially applying a "beyond a reasonable doubt" standard. *See id.* at *7.

[39] *See* IAB Decision at 9 ("As this is the Claimant's Petition, Claimant has the burden to prove by a preponderance of the evidence that the injury was caused by the work accident.").

standard in making factual findings or reaching legal conclusions.[40]  Therefore, the

Court will not reverse the IAB's decision on that ground.

**B.      The IAB should not consider past payment of medical expenses.**

Employer next argues that the IAB incorrectly relied upon, at least implicitly,

a legal theory called "implied agreement" in reaching its conclusion.  Specifically,

the IAB, in concluding that the injections at issue are causally related to the 2008

work incident, stated, among other things, that "there is no evidence that Employer

has not paid for such injections."[41]  Employer contends that the IAB incorrectly

considered past payment of medical expenses in determining compensability of

present, unpaid bills.  Particularly, Employer argues that the legal theory of "implied

agreement," being the only valid legal basis for considering past payment of medical

bills, although the IAB did not explicitly use the term, was not raised by any party

in the below proceedings.  Employer also argues that the IAB incorrectly shifted the

burden to Employer to prove the negative, while, even if an implied agreement was

properly raised, it would be Claimant's burden to prove.  Lastly, Employer argues

that there is no evidence in the record to support a finding under this legal theory.

---

[40] The Court, however, does find that the IAB's statement that Claimant's burden is "relatively low" to be vague and confusing.  It is difficult for the Court to determine what the IAB means there, but the Court also finds it unnecessary to further explore the puzzle.  Without any record evidence to the contrary, the Court finds it reasonable to conclude that the IAB applied the correct standard in rendering its decision.

[41] It is fairly clear from the context in the record, and both parties seem to agree, that "such injections" refer to those injections Claimant received after the work incident but prior to September 4, 2020.

10

The Court agrees with Employer that the IAB's consideration of payment for previous injections in determining causation or compensability of present, disputed medical expenses is improper. As articulated by Employer, except for the one sentence in the IAB's decision, there is no place in the record where payment for those prior injections was raised as an issue in this matter or even mentioned by any party in the proceedings before the IAB. Considering an issue not raised by the parties or fully developed in the record constitutes prejudice to Employer, let alone using that to support a ruling in Claimant's favor. Moreover, by stating that "[t]here is no evidence" that those prior injections have not been paid, the IAB apparently shifted the burden to Employer to prove that past payments have not been made. Not only is the shifting of the burden of proof legally incorrect by itself, the statement also suggests that the IAB assumed that past payments *have been made*. There is no record evidence to support this assumption.

However, notwithstanding the above, the Court does not find that the IAB's incorrect consideration of past payments, standing alone, renders its whole decision reversible. Employer claims that the legal theory of an implied agreement, based on past payments of medical expenses, is the "primary, if not sole, basis for finding causation" in this matter.[42] The Court does not agree. It is apparent from the IAB's decision that it relied upon a variety of factors, primarily the testimonies of Claimant

---

[42] Employer Opening Br. at 12.

and Dr. Cucuzzella, in finding a causal link between the injections at issue and the 2008 work incident. The single sentence regarding payment of past medical expenses is embedded in the IAB's discussion of the relevant evidence that was introduced at the hearing and clearly not the sole basis that the IAB used to support its finding. The Court also finds no indication that the problematic statement somehow constitutes the primary basis for the IAB's finding. As will be discussed below, taking the statement in dispute out of the IAB's reasoning process, its conclusion is still supported by substantial evidence.[43]

## C. The IAB's decision is supported by substantial evidence.

Although framed as legal errors committed by the IAB, the Court finds that the remainder of Employer's arguments all relates to the IAB's consideration and weighing of evidence. Employer first questions the IAB's choice of Dr. Cucuzzella over Dr. Rushton, when faced with contrasting testimonies given by the two experts. As alluded to by Employer, the Board is free to choose which expert it will believe and rely upon.[44] Although Employer is correct that Delaware has not explicitly adopted the "treating physician rule," under which a treating physician's expert opinion is granted more weight under the presumption that he or she is more familiar

---

[43] *See Davis v. Mark IV Transp.*, 35 A.3d 418 (TABLE), 2011 WL 6392950, at *2 (Del. Dec. 19, 2011) ("A Board's decision may be upheld if it rests upon substantial evidence after objectionable evidence is removed from consideration.") (internal citations omitted).
[44] *Miller v. Del. Psychiatric Ctr.*, 2013 WL 1281850, at *10 (Del. Super. Mar. 28, 2013) ("When the Board is presented with varying expert medical opinions, it is free to accept or reject the testimony, in whole or in part.") (internal citation omitted).

with the condition of the patient, the IAB is still authorized to, and often does, find the testimony of a treating physician more credible than that of a non-treating physician, based on particular facts in a case.[45]

Here, in determining to accept Dr. Cucuzzella's testimony, the IAB referenced the fact that Dr. Cucuzzella has been overseeing Claimant's care and administering injections to Claimant for over ten years since the 2008 work incident. The IAB also relied upon the nature of Claimant's injury, the frequency and manner by which Claimant seeks treatment for the injury, the fact that Claimant has been benefiting from those injections, and that Dr. Cucuzzella's testimony is consistent with Claimant's on those points. Therefore, it is inaccurate to claim that the IAB did not cite "any valid justification for choosing Dr. Cucuzzella over Dr. Rushton," as the IAB actually did that in its decision-making process, although perhaps not in a manner to Employer's satisfaction. The IAB is not required to do more.

After questioning the IAB's choice of expert, Employer engaged in an at-length discussion asserting that Dr. Cucuzzella's testimony is deficient and lacks any "medical and scientific basis." Employer pointed out that Dr. Cucuzzella's entire deposition testimony totals eleven pages. Employer claims that "there is no science" behind Dr. Cucuzzella's opinion that the injections are causally related to the work

---

[45] *Id.* ("As fact-finder, the Board has the flexibility to make credibility determinations as to expert witnesses.") (internal citation omitted).

incident.  Rather, Employer argues that such opinion is based solely on the fact that Claimant did not have any injections before the incident.  Employer also listed things that are absent from Dr. Cucuzzella's testimony which allegedly renders it "fatally flawed."[46]  As several non-exhaustive examples, Employer stated that Dr. Cucuzzella failed to discuss certain things or use certain medical terms in his testimony which, according to Employer, are "critical" to establish causation and reasonableness.  Employer also stated that Dr. Cucuzzella incorrectly based his conclusion that the injections are reasonable and necessary solely on the ground that they are effective in relieving Claimant of pain.  Employer further stated that Dr. Cucuzzella failed to address the risk of injections, a factor that must be taken into consideration when analyzing the reasonableness and necessity of a treatment option.

The Court finds it unnecessary to list every single purported deficiency in Dr. Cucuzzella's expert testimony, or to address them one by one, because they all fail for the same reason, that is, Employer fails to explain why those alleged deficiencies make Dr. Cucuzzella's opinion fall short of substantial evidence to support the IAB's conclusion.  Employer argues that basing causation solely upon the fact that Claimant did not start to receive injections until after the work incident constitutes

---

[46] Unsurprisingly, the factors allegedly absent from Dr. Cucuzzella's deposition testimony, which, according to the Employer, are critical in establishing a sound medical expert opinion, are all present in Dr. Rushton's testimony.

*post hoc* fallacy. But Employer fails to recognize that Claimant does not have to proffer *conclusive* evidence, as long as he proves causation by a preponderance of the evidence. Even Employer did not deny that the sequence of events here, i.e., Claimant starting injections after the incident, is relevant evidence with probative value to the question of causation. In addition, Employer takes issue with the fact that Dr. Cucuzzella's testimony is devoid of certain medical terms, such as aggravation, acceleration, traumatic, or MRI, but fails to cite to any authority that holds those terms must be present in a medical expert's opinion in a case like this.[47] Employer also argues that the single fact that the injections were effective in relieving the pain does not render them reasonable, and other factors, such as rationale behind the medical intervention and its associated risks, must be taken into consideration. But again, Employer fails to cite to any legal or medical authority that designates these factors as required scientific or legal steps to establish reasonableness. Rather, it appears that the only source that Employer relies upon in justifying the necessity of using those factors in rendering an expert opinion is Dr. Rushton's testimony.

Based on the particular facts in this case, the Court finds it reasonable for the IAB to adopt Dr. Cucuzzella's testimony in its ruling. Having served as Claimant's

---

[47] In fact, after claiming that Dr. Cucuzzella failed to use a host of critical medical terms, Employer then stated that "there are no 'magic words'" with regard to a medical expert opinion. *See* Employer Opening Br. at 16.

treating physician for about thirteen years, Dr. Cucuzzella testified to a reasonable degree of medical probability that the injections at issue are causally related to Claimant's 2008 work incident and are a reasonable and necessary treatment directed to Claimant's particular condition and complaints. Importantly, Dr. Cucuzzella also gave his reasons for those conclusions. The Court does not disagree that Dr. Rushton's deposition testimony, as compared to Dr. Cucuzzella's, is not only lengthier, but also seems to engage in a more detailed analysis in explaining his opinion. The Court similarly does not disagree that, if presented to a different trier-of-fact, it may well be that Dr. Rushton's testimony would prevail in this "battle-of-the-expert case", as acknowledged by Employer at the very beginning of the IAB hearing,[48] However, unlike the IAB, the Court does not sit as a trier-of-fact and is prohibited from making its own factual findings. It is notable that Employer has not sought to strike Dr. Cucuzzella's testimony or in any way limit it as lacking any scientific or medical basis in the proceedings before the IAB. Employer (understandably) disagrees with the IAB's credibility finding and weighing of evidence. However, the Court must defer to the "experience and special competence" of the IAB in those aspects of its ruling and finds that, based on the entirety of the record in this case, there is substantial evidence in support of the IAB's ultimate conclusion.

---

[48] Hr'g. Tr. at 5.

## IV. CONCLUSION

For the foregoing reasons, the Court finds that the IAB did not commit any reversible legal error and its factual findings and legal conclusions are supported by substantial evidence. Therefore, the IAB's May 9, 2022 decision granting Claimant compensation for additional medical expenses, as well as medical expert fees and attorney's fees, is hereby **AFFIRMED**.

**IT IS SO ORDERED THIS 6TH DAY OF DECEMBER 2022.**

Sheldon K. Rennie, Judge

17