# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

WAYLON MABREY,     :
           :
  Appellant,     :
           :   C.A. No.: K22A-06-001 JJC
           :
  v.        :
           :
STATE OF DELAWARE,   :
           :
  Appellee.     :

Submitted: June 21, 2023
Decided: September 21, 2023

## ORDER

On this 21st day of September 2023, after considering the record and the parties briefing, it appears that:

1. Appellant Waylon Mabrey appeals a decision of the Industrial Accident Board (hereinafter the "Board" or the "IAB") denying his petition to determine compensation due. Mr. Mabrey worked for the State as a DART Equipment Operator. Before the IAB hearing, the parties stipulated that he suffered a compensable work injury to his head and cervical spine after a tire struck him in the head while at work on February 27, 2019 (hereinafter the "accident").[1] His petition sought compensation for permanent impairment to his cervical spine related to the accident. The stipulation also recognized that the parties' two competing experts

---

[1] The Court refers to the certified record before the IAB as ["R. at"]. R. at Ex. 5.

had contrary opinions regarding permanent impairment: Mr. Mabrey's expert opined that he suffered a twenty-percent impairment of the cervical spine, and the State's expert opined that he suffered no permanent impairment as a result of the accident.[2]

2.    After the accident, through June 1, 2022, Mr. Mabrey received medical treatment for his injuries. His treatment included, *inter alia*, physical therapy and neck injections.[3] At some point between November 4, 2019, and April 5, 2021, Mr. Mabrey's medical provider released him to full-duty work with no restrictions.[4] Despite his release to full-duty, Mr. Mabrey testified that he continued to avoid lifting objects weighing more than thirty pounds both at work and at home.[5]

3.    Mr. Mabrey also had a previous workers' compensation claim for a work accident in 2014 (his "prior accident").[6] There, he suffered injuries to his right upper extremity.[7] During Mr. Mabrey's treatment for injuries from the prior accident, however, no medical provider or retained expert diagnosed him with a cervical spine injury related to the prior accident.[8] Nevertheless, his medical records reference neck pain and radiculopathy dating back to at least 2014.[9]

4.    At the hearing, the parties presented deposition testimony from two expert medical witnesses. Dr. Steve Rodgers testified on behalf of Mr. Mabrey and Dr. Andrew Gelman testified as a defense medical expert for the State. First, Dr. Rodgers testified to a reasonable degree of medical probability that Mr. Mabrey

---

[2] *Id.*

[3] *Mabrey v. State of Delaware*, No. 1482408, at 3 (Del. IAB June 9, 2022) [hereinafter "IAB Order"].

[4] *Id.* at 7.

[5] *Id.* at 8.

[6] *Id.* at 2.

[7] *Id.*

[8] *Id.*

[9] Emp.'s Ex. 1, R. at 24:1–4; 28:9–17 [hereinafter "Dr. Gelman's Dep. at . . ."]; *see id.* 43:8–15 (stating that his records evidence radiculopathy as far back as 2014).

suffered a twenty-percent impairment to the cervical spine caused by the accident.[10] He acknowledged, however, that Mr. Mabrey's treatment records included documented neck pain throughout 2018 and into early 2019 immediately before the accident.[11] In his testimony, he also conceded that Mr. Mabrey had remained highly active and was doing quite well.[12]

5.    Dr. Gelman testified on behalf of the State. He acknowledged that Mr. Mabrey had cervical spondylosis with radiculopathy but testified to a reasonable degree of medical probability that the accident was not the cause of those conditions. Rather, he opined that the accident caused only a concussion and "strain and sprain" to his neck that resolved by 2022.[13] Furthermore, he opined that Mr. Mabrey's injuries required treatment from February 2019 through April 2021, which was approximately six months before Dr. Gelman's exam.[14] Finally, he focused on the entries in Mr. Mabrey's medical records that referenced his cervical complaints before the 2019 accident.[15]

6.    In a written decision, the IAB found Dr. Rodgers' testimony regarding causation of permanency unpersuasive for three reasons.[16] First, it discredited his opinion because it relied on the fact that Mr. Mabrey had only a single positive Spurling's test finding in September 2019. In contrast, Mr. Mabrey's treating physician performed seven Spurling's tests over his two-year course of treatment for

---

[10] Claimant's Ex. 1, R. at 22 [hereinafter "Dr. Rodgers' Dep . . . "].

[11] *See id.* 29:3–4 (acknowledging in testimony that Dr. Gondolfo's chiropractic records "address both the cervical spine and the shoulder on a continuing basis," before the accident.); *Id.* 31:18–23 (acknowledging that Dr. Gondolfo's chiropractic records reported neck pain throughout 2018 and 2019).

[12] Dr. Rodgers' Dep. 35:1–22.

[13] Dr. Gelman's Dep. 26:22–24; 27:1–5.

[14] *Id.* 51:8–21.

[15] *See id.* 21–22 (referencing Mr. Mabrey's prior chiropractic records that recorded "moderate neck pain" and noted "muscle spasm bilaterally, C4-C5 and T1" which became worse when "lifting, pushing, pulling with his hands, reaching out up and down").

[16] IAB Order at 12.

the accident which produced all *negative* results.[17]  Second, the Board found that Dr. Rodgers assigned too little weight to the chiropractic reports that described Mr. Mabrey's significant prior neck pain.[18]  Third, the IAB took issue with Dr. Rodgers' blanket discounting of other cervical related entries in Mr. Mabrey's early 2019 and 2018 medical records that predated the accident.  Those entries included one entered immediately before the accident that referenced his history of "moderate neck pain symptoms, achiness, and tightness."[19]

7.      The Board also considered Mr. Mabrey's current activity level when assessing whether he suffered permanent impairment related to the accident.[20]  Mr. Mabrey testified that he was able to perform most of his job duties with minimal accommodations and now requires only over-the-counter medication for headaches and prescription muscle relaxers to help with sleep.[21]  Furthermore, treatment records from Mr. Mabrey's physician recorded that Mr. Mabrey continued to enjoy a high level of activity and had no upper extremity numbness or weakness.[22]  Given this evidence of record coupled with Dr. Gelman's opinion that all injuries related to the accident resolved before the hearing, the Board found that Mr. Mabrey had failed to meet his burden of establishing that he suffered any permanent impairment related to the accident.[23]

8.      Mr. Mabrey now appeals the Board's decision.  On appeal, he urges the Court to give no deference to the Board's expert credibility determinations because

---

[17] *Id.* at 7.

[18] *Id.*

[19] *Id.*

[20] *Id.*

[21] *See id.* at 12, 14 (finding Mr. Mabrey suffered no permanent impairment causally related to the work accident); *see also id.* at 13 (finding that Mr. Mabrey failed to prove his minimal limitations warranted a twenty-percent permanent impairment).

[22] *Id.* at 13.

[23] *Id.*

both experts testified via deposition.[24] Separately, Mr. Mabrey contends that the Board erred as a matter of law in two ways. First, he contends that the Board erred by not concluding that the 2019 accident aggravated his pre-existing injuries.[25] Second, he alleges that the evidence of record required the Board to award at least a lower permanent impairment percentage, even if Mr. Mabrey failed to prove a twenty-percent impairment.[26]

9.     The State counters that the Board permissibly exercised its discretion when discrediting Dr. Rodgers' opinion.[27] The State further contends that the record contains substantial evidence to support the IAB's finding that Mr. Mabrey suffered no permanent impairment related to the accident.[28]

10.     In this appeal, the Court's review of the IAB's factual findings is limited to determining whether the Board's decision is supported by substantial evidence.[29] Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[30] It is "more than a scintilla but less than a preponderance of the evidence."[31] Furthermore, on appeal, the Court views the facts in the light most favorable to the prevailing party below.[32] Moreover, the Court does not determine questions of credibility or make its own factual findings.[33] Absent an error of law, which the Court reviews *de novo*, the Court must

---

[24] *Id.* at 12–13.
[25] Appellant's Opening Br. at 14–15.
[26] *Id.* at 18.
[27] Appellee's Answering Br. at 17.
[28] *Id.*
[29] *Bullock v. K-Mart Corp.*, 1995 WL 339025, at *2 (Del. Super. May 5, 1995) (citing *General Motors Corp. v. Freeman*, 164 A.2d 686, 688 (Del. 1960)).
[30] *Olney v. Cooch*, 425 A.2d 610, 614 (Del. 1981) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)).
[31] *Washington v. Delaware Transit Corp.*, 226 A.3d 202, 210 (Del. 2020) (citation omitted).
[32] *Chudnofsky v. Edwards*, 208 A.2d 516, 518 (Del. 1965).
[33] *Bullock*, 1995 WL 339025, at *2 (citing *Johnson v. Chrysler Corp.*, 213 A.2d 64, 66 (Del. 1965)).

5

uphold a decision of the IAB supported by substantial evidence unless the Board abused its discretion.[34] The Board abuses its discretion when its decision exceeds the bounds of reason in view of the circumstances.[35]

11. The Court first addresses Mr. Mabrey's argument that the Court should give no deference to the Board's expert credibility determinations.[36] For that premise, he relies on the Superior Court decision *Lindsay v. Chrysler*.[37] In *Lindsay*, the court refused to give deference to the Board's conclusory preference for one doctor's testimony over another. There, the Board had recognized that one doctor's testimony was merely "persuasive," without further explanation.[38] Under that circumstance, the court remanded the matter to the IAB for additional explanation.

12. Mr. Mabrey's case is more analogous to the appeal considered in *Glanden v. Land Prep, Inc.,*[39] however. There, the Delaware Supreme Court examined contrary expert witness opinions as to permanent impairment. When doing so, the Supreme Court distinguished *Lindsay* and limited its holding to the recognition that the Board must explain its decision to discredit an expert's opinion with more than a single conclusory statement.[40] More importantly, the Supreme Court in *Glanden* reaffirmed the principle that the "board is free to choose between conflicting medical expert opinions" and that reliance upon expert testimony itself constitutes substantial evidence.[41]

13. Here, unlike in *Lindsay*, the Board specifically outlined its basis for discrediting Dr. Rodgers' opinion by citing significant evidence of record to support

---

[34] *Hoffecker v. Lexus of Wilmington*, 2012 WL 341714, at *1 (Del. Feb. 1, 2012) (TABLE).
[35] *Id.*
[36] Appellant's Opening Br. at 16.
[37] 1994 WL 750345 (Del. Super. Dec. 7, 1994).
[38] *Id.* at *3.
[39] 918 A.2d 1098 (Del. 1997).
[40] *Id.* at 1101.
[41] *Id.* at 1102.

its decision. Namely, the Board explained why it rejected Dr. Rodgers' opinion that Mr. Mabrey's cervical spondylosis with radiculopathy worsened after the accident. When rejecting Dr. Rogers' opinion in favor of Dr. Gelman's, the Board explained how it placed significant weight on the *seven* negative Spurling's tests performed by Mr. Mabrey's treating physician. Those seven negative tests both pre-dated and post-dated the single positive test performed by Dr. Rodgers. Furthermore, the Board explained that it rejected Dr. Rodgers' opinion that the accident caused permanent cervical impairment because Dr. Rogers had disregarded Mr. Mabrey's prior medical records dating back to 2013.[42] Finally, the Board recognized that Mr. Mabrey's current capabilities – full-time work with no restrictions and minimal accommodations – further cut against a finding that the accident caused him permanent cervical impairment.[43] With those explanations, the Board articulated why it assigned no weight to Dr. Rodgers' opinion. Given those adequate explanations, the analysis settles upon a review for substantial evidence. Dr. Gelman's testimony that Mr. Mabrey suffered no permanent impairment related to the accident constituted substantial evidence to support the IAB's decision.

14. Mr. Mabrey separately contends that the Board erred as a matter of law because it failed to articulate what causal link existed between Mr. Mabrey's pre-existing impairment and a post-accident aggravation.[44] In support, Mr. Mabrey emphasizes that he never required an EMG, spinal injections, or had a physician diagnose him with radiculopathy before the 2019 accident.[45] He further stresses that his neck-related treatment, including the need for injections in the first instance, increased after the accident.[46] When focusing on his aggravation of injuries, he

---

[42] IAB Order at 10, 12.
[43] *Id*. at 13.
[44] Appellant's Opening Br. at 18.
[45] *Id*. at 16–17.
[46] *Id*. at 17.

relies on *Reese v. Home Budget Center*.[47] That decision provides the proper causation test in a workers' compensation claim involving a pre-existing injury. In *Reese*, the Delaware Supreme Court explained that a worker's predisposition to a particular injury does not bar his or her claim for worker's compensation if job-related duties aggravated or contributed to a resulting injury or disability.[48]

15. There is an important distinction between Mr. Mabrey's claim and the claim examined in *Reese*. Namely, the *Reese* decision merely clarifies that the accident need be neither the sole cause nor a substantial cause of the injury to be compensable.[49] In Mr. Mabrey's case, there is no issue regarding causation of initial injury. The parties stipulated that he sustained a compensable work-related injury to his neck. Here, his petition for additional compensation due seeks compensation for permanent impairment to his neck. In other words, the potential "injury" that the IAB examined in this petition was potential permanent impairment in the area of injury.

16. The Court acknowledges that Mr. Mabrey cites significant evidence that could have supported a Board finding that the accident aggravated a pre-existing cervical condition to the extent that the accident caused new (or increased) permanent impairment. The record also contains substantial evidence to support the Board's finding to the contrary. Again, Dr. Gelman testified that the accident caused no permanent impairment. Furthermore, Mr. Mabrey's medical history recorded years of neck discomfort and impairment that predated the 2019 accident. As recently as January 21, 2019 – immediately before the accident – chiropractic

---

[47] 619 A.2d 907, 910 (Del. 1992). (holding that "[i]f the worker had a preexisting disposition to a certain physical or emotional injury which had not manifested itself prior to the time of the accident, an injury […] is compensable if the injury would not have occurred but for the accident.")
[48] *Id.*
[49] *Id.*

8

records recorded significant cervical limitations.[50]   Finally, Mr. Mabrey's treatment had completely waned by the time of the hearing other than his use of over-the-counter medicines and the occasional use of muscle relaxers at bedtime.  The record demonstrates that Mr. Mabrey (1) had not received a spinal injection since 2021, approximately a year before the hearing, and (2) Mr. Mabrey was able to return to his job on a full-time basis after the accident with only minimal accommodations.

17.     Finally, Mr. Mabrey contends that the Board erred as a matter of law by failing to award some lesser percentage of permanent impairment.     For this argument, he focuses on Dr. Gelman's testimony where he posited that Mr. Mabrey may have had a ten-percent permanent impairment that preexisted the accident.[51] That testimony, Mr. Mabrey contends, required the Board to find that he suffered at least some degree of accident-related permanent impairment.   Dr. Gelman's testimony, at its best for Mr. Mabrey, supported that he had a ten-percent preexisting permanent impairment that the accident did *not* aggravate, accelerate or contribute to producing *further impairment* above that pre-existing ten percent.[52]   Admittedly, had the record contained uncontroverted expert testimony that the accident had contributed (in a but for sense) to an increase in permanency, then the Board would have been required to either (1) determine the exact percentage of permanency to

[50] *See* Dr. Gelman Dep. 21:8-24 (testifying based upon Mr. Mabrey's records that Mr. Mabrey told the chiropractor treating him before the accident he suffered from moderate neck tightness and had limited "lifting, pushing, pulling with his hands, and reaching out up and down;" and that the chiropractor recorded observing spasms bilaterally in his spine and appreciated tenderness in the area).

[51] *See*  Dr. Gelman's Deposition 33:6–11 (opining that Mr. Mabrey had a ten-percent cervical impairment related only to his condition that existed prior to the accident).

[52] *See Reese v. Home Budget,* 619 A.2d at 910 (recognizing that the principle in Reese applies only if (1) the work accident "aggravated, accelerated, or in in combination with the [preexisting] infirmity produced the disability, and (2) the injury had not manifested itself prior to the time of the accident).  Here, the "injury" considered is permanency.  Dr. Gelman maintained that even if Mr. Mabrey had a ten-percent cervical impairment before the accident, such a permanent impairment did not increase after the accident to any degree.

award by keeping within the expert's ranges, or (2) independently and clearly articulate the facts upon which it based a different conclusion.[53] In this case, however, Dr. Gelman's opinions and the evidence regarding Mr. Mabrey's preexisting cervical complaints and limitations freed the Board to apply its judgment in favor of assigning weight to only Dr. Gelman's opinions. As a result, the IAB committed no error of law when it declined to find any degree of permanent impairment related to the accident.[54] While the Court may have reached a different conclusion under the facts of this case, the Board's decision was also based upon substantial evidence, and was not an abuse of discretion.

**NOW THERFORE**, for the reasons above, the Board's decision in this matter must be **AFFIRMED.**

**IT IS SO ORDERED.**

/s/ Jeffrey J Clark
Resident Judge

cc:    Walt F. Schmittinger, Esquire
       Andre M. Lukashunas, Esquire
       Megan E. Traynor, Esquire
       Industrial Accident Board
       Prothonotary

---

[53] *Bedwell v. A&P Tea Co.*, 1988 WL 102986, at *2 (Del. Super. Sept. 28, 1988); *See also Whaley v. Shellady, Inc.*, 161 A.2d 422, 423–24 (Del. 1960) ("The credibility of witnesses is usually a question for the finders of fact. Even uncontradicted evidence need not necessarily be accepted as true, where there is evidence or circumstances from which a contrary inference may be drawn.").

[54] *See Shipmon v. State*, 275 A.3d 755, 2022 WL 984396, at *3 (Del. Apr. 1, 2022) (TABLE) ("the Board is not required to, and should not, make a determination that a permanent partial impairment is of a certain degree when there is no evidence in the record to support that finding.").