# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| BILLY HUNSUCKER, | ) | |
| | ) | |
| Claimant-Below/ | ) | |
| Appellant, | ) | C.A. No. K22A-11-001 RLG |
| | ) | |
| SCOTT PAPER COMPANY, | ) | |
| | ) | |
| Employer-Below/ | ) | |
| Appellee. | ) | |

**Submitted: February 1, 2023**
**Decided: June 16, 2023**


## MEMORANDUM OPINION AND ORDER


**Upon Appellant's Appeal from a Decision of the
Industrial Accident Board – AFFIRMED.**


Billy Hunsucker, *Pro Se Claimant-Below/Appellant.*

John W. Morgan, Esquire, Heckler & Frabizzio, Wilmington, Delaware. *Attorney for Employer-Below/Appellee Scott Paper Company.*


**GREEN-STREETT, J.**

## I. Introduction

Billy Hunsucker (the "Claimant") filed an appeal with this Court seeking review of the Industrial Accident Board's (the "Board" or the "IAB") decision granting Scott Paper Company's ("Scott Paper") Petition for Review ("PFR"). Scott Paper's PFR challenged the continued reasonableness, necessity, and casual relation of pain management treatment – namely, medication – for Claimant. Because there is substantial evidence to support granting Scott Paper's PFR, the decision of the Board is **AFFIRMED**.

## II. Factual and Procedural Background

### A. Claimant's Work Accident, Injuries, and Medical Treatment

On August 3, 1994, Claimant sustained a compensable work-related injury while employed by Scott Paper.[1] As a result of the work accident, he ultimately underwent cervical fusion surgery and treated with Dr. Jay Freid ("Dr. Freid") for ongoing pain management, including narcotic pain medication.[2] Scott Paper compensated Claimant for lost wages and medical treatment through May 2, 2022, the date the PFR was filed.[3]

---

[1] Record, "Decision on Petition for Review," at 2.

[2] Record, "Claimant's Exhibit #1," at 6.

[3] Record, "Joint Exhibit #1," at 1; Record, "Employer's Petition for Review," at 1; Record, "Decision on Petition for Review," at 2.

## B. The Board's Hearing

On May 2, 2022, Scott Paper filed a PFR under 19 Del. C. § 2347, challenging the reasonableness, necessity, and causal relation of pain management treatment for Claimant.[4]  On September 28, 2022, the Board held a Hearing (the "Hearing") to consider Scott Paper's PFR.[5]  At the Hearing, Scott Paper clarified that its challenge focused on Claimant's high dosage of opioid pain medication.[6]  Specifically, Scott Paper sought reduction – not termination – of Claimant's opioid pain medication.[7] Scott Paper's application was based on the opinions of its retained medical expert, Dr. Jason Brokaw ("Dr. Brokaw").

Dr. Freid and Dr. Brokaw provided all medical testimony at the Hearing.[8] Both doctors testified by deposition.[9]  Both doctors previously examined Claimant and rendered opinions as to the appropriate pain management for Claimant.[10] Claimant also testified at the Hearing.[11]

---

[4] Record, "Decision on Petition for Review," at 2.

[5] Id.

[6] Record, "Decision on Petition for Review," at 2.

[7] Id.

[8] Id. at 2, 3.

[9] Id. at 2, 10.

[10] Id.

[11] Id. at 8, 9.

## 1. **Dr. Freid's Testimony**

Dr. Freid, who testified on behalf of Claimant, opined that Claimant should not be required to lower his dosage of pain medication, as he had done well with his regimen, was stable, and had experienced no side effects.[12] Dr. Freid outlined Claimant's medication regimen – noting that Claimant had been consuming a high dosage of opiates since, at least, 2009.[13] While Dr. Freid acknowledged that reduction of Claimant's medication consumption was optimal, he advocated against any abrupt change.[14]

Dr. Freid further highlighted that rapidly tapering patients off, or abruptly discontinuing, opiates creates a high risk of addiction, overdose, suicide, and overall death rates.[15] As such, Dr. Freid cautioned that any reduction of Claimant's medications should be executed very slowly – and that Claimant should be weaned off his medication one dose at a time, over a lengthy period of time.[16] Specifically,

---

[12] Record, "Claimant's Exhibit 1," at 15:2-10.

[13] Record, "Claimant's Exhibit 1," at 6:17-24, 7:1-11, 7:15-21, 13:21-14:2, 21:8-19, 30:18-31:4, 9-10, 31:15-32:5 (Dr. Freid testified that, since at least 2009, Claimant has taken OxyContin, 80 milligrams, three times per day. In addition to the OxyContin, Claim has taken 30 milligrams of morphine at least twice and up to four times per day – a medication regimen which equates to 420 to 480 milligrams of morphine equivalence ("MME") per day.).

[14] Id. at 21:8-19.

[15] Id. at 18:7-19.

[16] Id. at 22:3-16.

4

Dr. Freid testified that a reasonable reduction of Claimant's opiate usage would be ten to thirty percent over the course of a year.[17] Dr. Freid believed it was unrealistic for Claimant to be safely reduced to under 200 MME per day within a year.[18]

### 2. Dr. Brokaw's Testimony

Dr. Brokaw, who testified on behalf of Scott Paper, examined Claimant on two separate occasions – once in December 2021 and once in July 2022.[19] At the December 7, 2021 appointment, Claimant's overall objective examination was benign.[20] Although complaining of moderate-to-high levels of pain, "[Claimant] did not exhibit any significant pain behavior."[21] At the time of that examination, Claimant's medication dosage was 450 MME per day.[22]

During Dr. Brokaw's second examination on July 19, 2022, Claimant informed Dr. Brokaw that he was "pretty much the same."[23] Since the December 2021 appointment, Claimant had reduced his morphine intake to 420 MME per

---

[17] Id. at 32:6-33:19.

[18] Id. at 37:9-38-10.

[19] Record, "Employer's Exhibit 1," at 8:13-9:8.

[20] Id. at 9:9-10:9.

[21] Id.

[22] Id. at 10:10-17.

[23] Id. at 19:16-20:5, 32:8-18.

day.[24] Dr. Brokaw opined that this reduction constituted a meaningful first step in titrating Claimant down to safer dosages.[25] However, in contrast to the slow titration suggested by Dr. Freid, Dr. Brokaw recommended that Claimant's opiate intake be reduced by approximately ten percent every couple of weeks. At that rate, and with the assistance of other forms of treatment, Claimant could be lowered to 90 MME per day within approximately six months.[26]

In his testimony, Dr. Brokaw explained that the Centers for Disease Control and Prevention issued its Guideline for Prescribing Opioids for Chronic Pain ("CDC Guideline") in 2016.[27] Prior to the issuance of the CDC Guideline, similar professional guidelines were followed by the pain management community for over a decade.[28] The CDC Guideline established acceptable opioid dosage ranges – with any dosage above 90 MME per day being considered high dosage.[29] While

---

[24] Id. at 20:6-20.

[25] Id. at 22:20-23:3, 24:5-11.

[26] Id. at 23:4-24:2, 33:5-17.

[27] Id. at 17:11-18:9, 33:20-38:11, 42:7-15, 45:4-22.

[28] Id. at 34:11-35:20 (According to Dr. Brokaw, the standards set forth in the CDC Guideline were already utilized by the pain management community, who followed a similar standard outlined by the 2014 American Society for Interventional Pain Physician Guidelines. Prior to 2014, pain management physicians followed guidelines issued by the American Academy of Physical Medicine and Rehabilitation. In 2016, the CDC simply standardized opioid prescription protocols for all physicians to follow.).

[29] Id. at 17:11-17.

acknowledging that some patients might require 90 MME per day, Dr. Brokaw emphasized that the CDC Guideline required careful documented justification for dosages above 90 MME per day. [30] Dr. Brokaw noted that Dr. Freid did not provide any such justification in his records for Claimant's dosage of 420 MME per day.

Dr. Brokaw opined that Dr. Freid also failed to follow numerous pain management standards.[31] Specifically, in Dr. Freid's records, there were no pain contracts with Claimant;[32] was no documentation of Claimant's pill counts;[33] was no completed risk stratification questionnaires;[34] or were no documented urine screens.[35] Dr. Brokaw also underscored Dr. Freid's failure to rotate Claimant's medication properly or reduce his opiate dosage for over a decade.[36] Dr. Brokaw testified that, without other forms of treatment, Claimant's long-term treatment with high-dosage opiate medication was unreasonable and unnecessary.[37]

---

[30] Id. at 36:1-3.

[31] Id. at 11:4-12:1.

[32] Id. at 13:14-14:13, 27:22-28:5.

[33] Id. at 12:5-13:8.

[34] Id. at 14:14-15:4, 16:2-17-3.

[35] Id. at 12:22-13:13, 28:14-29:17.

[36] Id. at 15:5-16:1, 30:9-23.

[37] Id. at 18:10-22, 20:6-21:16.

### 3. **Claimant's Testimony**

Claimant testified that, after his 1994 surgery, his pain was still excruciating.[38] He further testified that he commenced post-surgical treatment with Dr. Freid in the late 1990s. Claimant explored various pain management modalities and medication concoctions. Despite these attempts, Claimant's pain persisted.[39]

It was not until Claimant began the medication regimen of OxyContin and morphine that he was able to perform daily activities with significantly less pain.[40] Claimant conceded that Dr. Freid continuously told him his dosages should be reduced.[41] In 2018, Dr. Freid reduced Claimant's dosage, as Claimant was not experiencing "extreme peaks" of pain.[42] When asked at the Hearing about his position on the reduction of his pain medication, Claimant stated:

> I don't mind reducing it, but it's working well. I don't want to reduce it too much, to where I go back to being miserable and can't do anything. So I'm just – I don't mind trying to reduce it like Dr. Fried [sic] suggests, but it's working well where it's at. It's been working well for a long period of time. That's why we haven't changed anything.

---

[38] Record, "Hearing Transcript," at 27:3-9, 35:17-19.

[39] Id. at 28:1-16.

[40] Id. at 29:4-6, 30:13-18, 38:9-14.

[41] Id. at 37:2-18.

[42] Id.

8

I'm just a little leery of messing with what works.[43]

## C. **The Board's Decision**

After hearing testimony and reviewing documentary evidence, the Board rendered a decision granting Scott Paper's PFR, deeming Claimant's high dosage of pain medication to be unreasonable and unnecessary.[44] In its opinion, the Board accepted the medical conclusions of Dr. Brokaw over those of Dr. Freid,[45] finding that the reduction of Claimant's high dosage of opioids to a maximum level of 90 MME per day was in his best interest.[46] Further, the Board agreed with Dr. Brokaw's six-month timeline for Claimant to titrate down and detoxify.[47] As such, the Board ordered Claimant to reduce his opiate intake from 420 MME per day to a maximum of 90 MME per day within six months.[48] The Board clarified that, if necessary, other

---

[43] Id. at 38:1-8.

[44] Record, "Decision on Petition for Review," at 19-20.

[45] Id. at 16.

[46] Id.

[47] Id. at 20.

[48] Id. (The Board also found that Scott Paper was required to pay for Claimant's opioid medications during the six-month weaning process, in accordance with the Delaware Workers' Compensation Fee Schedule.).

categories of medication and treatment modalities might be helpful for Claimant during the weaning period.[49]

In making its factual determinations, the Board was persuaded by the medical testimony:

> Even Dr. Freid admitted that Claimant is at a substantial extra risk of death, overdose and addiction because of his high dosage of opiates. He also agreed that there has been a push in the past five years to get patients on less medication. Claimant's combination of OxyContin and morphine in December 2021 equated to 450 MME [per day], which is 500% greater than the dividing line between moderate and high dosage [per the CDC Guideline]. Dr. Brokaw explained that the vast majority of pain management physicians will not prescribe such a high dose of opiates anymore, nor would they continue a patient on that dose for decades without changing the medication.[50]

The Board found that, while the CDC Guideline did not provide for a maximum dosage of opiates, "the dosage [needed to] be safe and reasonable to be compensable[,] and there [had to] be carefully documented justification for [ ] dosages above 90 MME [per day]."[51] The Board determined that continuing

---

[49] Id. at 18, 20.

[50] Id. at 17, 18.

[51] Id. at 18.

Claimant on extremely high opioid doses was not only unreasonable and unnecessary, but also dangerous and inappropriate.[52]  Given Dr. Brokaw's medical opinion and Dr. Freid's concessions regarding Claimant's high dosage, the Board concluded that Claimant should reduce his opiate intake from 420 MME per day to a maximum of 90 MME per day within six months.  This appeal followed.

## III.  Standard of Review

When hearing a decision of the IAB on appeal, the reviewing court must "determine whether the IAB's decision is supported by substantial evidence and is free from legal error."[53] Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[54] However, in making this determination, the Superior Court does not "sit as a trier of fact with authority to weigh the evidence, determine questions of credibility, and make its own factual findings and conclusions."[55] The Court may not "substitute its judgment for that of the Board below, unless the finding by the Board is manifestly against the weight of and has *no* foundation in the evidence."[56] Thus, the reviewing Court will

---

[52] Id.

[53] Glanden v. Land Prep, Inc., 918 A.2d 1098, 1100 (Del. 2007) (internal citations omitted).

[54] Oceanport Indus., Inc. v. Wilmington Stevedores, Inc., 636 A.2d 892, 899 (Del. 1994) (citing Onley v. Cooch, 425 A.2d 610, 614 (Del. 1981)).

[55] Johnson v. Chrysler Corp., 213 A.2d 64, 66 (Del. 1965).

[56] General Motors Corp. v. Freeman, 157 A.2d 889, 894 (Del. Super. 1960) (emphasis added).

11

not reverse the IAB's decision "when there is *some* evidence to support the Board's findings of fact and where there has been no error of law."[57] In reviewing a Board's decision, the Court must view the record "in the light most favorable to the prevailing party."[58]

## IV. Discussion

On appeal, Claimant does not assert that the Board committed legal error. Rather, Claimant contends that the Board's decision was not supported by substantial evidence. First, Claimant argues that the Board misconstrued and mischaracterized the medical evidence – and that this faulty analysis led the Board to accept Dr. Brokaw's medical opinion over that of Dr. Freid. In support of this position, Claimant posits that the Board's bias against opioid use and opioid users resulted in wrongful acceptance of Dr. Brokaw's opinion.[59] Tangentially, Claimant argues that Scott Paper's sole concern centered around the cost of the pain medication, not his wellbeing.[60]

---

[57] <u>Dallachiesa v. General Motors Corp.</u>, 140 A.2d 137, 138 (Del. Super. 1958) (emphasis added).

[58] <u>Lopez v. Parkview Nursing Home</u>, 2011 WL 900674, at *3 (Del. Super. Mar. 15, 2011).

[59] Appellant's Opening Br. at 1, 2; Appellant's Reply Br. at 3.

[60] Appellant's Reply Br. at 2, 3.

Second, Claimant argues that the six-month timeline ordered by the Board is unreasonable given his medical history. He suggests that, according to Dr. Freid's interpretation of his medical needs, that timeline should be extended.[61] Both of these arguments will be evaluated in detail below.

## A. The Board's Analysis of the Medical Testimony

Claimant contends that the Board misconstrued and mischaracterized the medical evidence in this case. At the Hearing, the Board was presented with competing medical opinions. Each doctor thoroughly addressed Claimant's pain management treatment and potential reduction of opioid medication. However, the doctors reached differing conclusions concerning the timeline for Claimant's medication weaning. After reviewing the testimonies of both doctors, the Board explicitly chose to accept the medical opinion of Dr. Brokaw over the medical opinion of Dr. Freid.

The Board's ability to accept one doctor's medical opinion over another's finds substantial support in Delaware law.[62] The Delaware Supreme Court has

---

[61] Appellant's Opening Br. at 1, 2; Appellant's Reply Br. at 2, 3.

[62] Munyan v. Daimler Chrysler Corp., 909 A.2d 133, 136 (Del. 2006) ("If the medical evidence is in conflict, the Board is the finder of fact and must resolve the conflict."); Playtex Prods., Inc. v. Harris, 2004 WL 1965985, at *2 (Del. Super. Aug. 31, 2004) ("Where there is conflicting medical testimony, it is well established under Delaware law that the IAB may rely on the opinion of either expert and such evidence constitutes substantial evidence for the purpose of the IAB's decision."); State v. Steen, 1999 WL 743326, at *3 (Del. Super. July 29, 1999) ("It is well-established that[,] when qualified experts give conflicting medical testimony in a workers' compensation case, the

determined that "the Board is free to choose between conflicting medical expert opinions," and the expert testimony which is relied upon will constitute substantial evidence for purposes of appeal.[63] There is no dispute that the Board's decision to accept the medical opinion of Dr. Brokaw over the medical opinion of Dr. Freid does not constitute an error of law. The Board's reliance upon Dr. Brokaw's opinion is supported by substantial evidence in the record. Further, Claimant's arguments concerning Board bias and Scott Paper's focus on cost have no merit and are hereby rejected. Accordingly, the Board's analysis of the medical evidence will not be disturbed by this Court on appeal.

### B. The Board's Determination on Claimant's Weaning Schedule

Claimant argues that, because he has been stable on his opioid medication, the timeline to reduce his dosages as set forth by Dr. Freid – as opposed to that of Dr. Brokaw – is safer and will be more effective for him.[64] He further posits that the six-month timeline ordered by the Board is unreasonable. In making such an argument, Claimant asks this Court to act as factfinder. This Court does not sit as a

---

Industrial Accident Board is free to rely on the opinion of either expert, and such evidence constitutes substantial evidence for purposes of the Board's decision.").

[63] Glanden, 918 A.2d at 1102 (Del. 2007) (quoting DiSabatino Bros. Inc., Wortman, 453 A.2d 102, 106 (Del. 1982)); Person-Gaines v. Pepco Holdings, Inc., 981 A.2d 1159, 1161 (Del. 2009).

[64] Appellant's Reply Br. at 1, 3.

trier of fact when reviewing a decision of the Board on appeal. The sole trier of fact in this case is the Board.[65]

Further, Delaware law supports that the Board has broad jurisdiction and authority to order a claimant to act.[66] The Board conducted the Hearing, made factual determinations based upon testimony and documentation, and accepted Dr. Brokaw's testimony as more credible than the testimony of Dr. Freid. The Board issued a decision, and, consistent with Dr. Brokaw's testimony, ordered Claimant to reduce his opioid intake to 90 MME per day over six months.[67] Thus, there is substantial evidence in the record to support the Board's decision. Accordingly, that decision will not be disturbed by this Court on appeal.

## V.    Conclusion

The essence of Claimant's argument on appeal is that the Board should not have accepted Dr. Brokaw's medical opinion over that of Dr. Freid. In making this argument, Claimant requests that this Court review the evidence, weigh each witness's credibility, and reach its own conclusions, substituting its own judgment for the Board's. This substitution of judgment is not the role of the reviewing Court.

---

[65] Glanden, 918 A.2d at 1100 (Del. 2007).

[66] See e.g. 29 Del. C. § 10102 (providing the IAB with authority to issue injunctive relief, to include "requiring a named party to act"); Boone v. Syab Services/Capitol Nursing, 2012 WL 3861059, at *2 (Del. Super. Aug. 23, 2012) (finding the Board has "administrative discretion" to compel a claimant to use the Express Scripts program).

[67] Appellee's Answering Br., at 13.

Rather, the role of this Court is to conclude whether (1) there was substantial evidence to support the Board's decision; and (2) the Board committed legal error. After reviewing the record, this Court concludes that there was substantial evidence to support the Board's decision and the Board did not commit legal error. Accordingly, the decision of the Board is **AFFIRMED**.

    **IT IS SO ORDERED.**

_____
Reneta L. Green-Streett, Judge