**DAY & ZIMMERMAN SECURITY,**
**Employer Below, Appellant,**

v.

**Thomas SIMMONS, Employee**
**Below, Appellee.**

**No. 283, 2008.**

Supreme Court of Delaware.

Submitted: Nov. 5, 2008.

Decided: Dec. 23, 2008.

Maria Paris Newill, Esquire, of Heckler & Frabizzio, Wilmington, Delaware; for Appellant.

Michael P. Freebery, Esquire, of Michael P. Freebery, P.A., Hockessin, Delaware, for Appellee.

Before STEELE, Chief Justice, and BERGER and JACOBS, Justices.

JACOBS, Justice.

Day & Zimmerman Security ("Zimmerman" or "Employer") appeals from a Superior Court order affirming a decision of the Industrial Accident Board ("Board") granting compensation to Zimmerman's former employee, Thomas Simmons ("Simmons") for injuries he suffered while on the job. On appeal, Employer argues that the Superior Court erroneously upheld the Board's order, because the Board: (1) did not base its decision on substantial evidence, (2) committed errors of law that exceeded its jurisdiction, and (3) abused its discretion by awarding attorney's and expert witness fees to Simmons. We find no merit to these claims and affirm.

### FACTUAL AND PROCEDURAL

## BACKGROUND [1]

Simmons, a 62 year old man, was hired by Zimmerman as a security guard in 2003. Simmons suffered a heart attack on September 19, 2005, while working at a facility of one of his Employer's clients, Ace Insurance Company. Employer does not dispute the nature or extent of Simmons' injuries, but contests whether the injuries occurred during the course and scope of Simmons' employment. Simmons claims that his heart attack was precipitated by, and occurred when, he was responding to an emergency involving another employee. During that episode, Simmons ran across the Ace Insurance Company campus, and then up and down four flights of stairs, in a short time period. Employer claims that Simmons' injuries resulted from preexisting coronary disease and that Simmons was feeling seriously ill even before he responded to the emergency.

As a result of his heart attack, Simmons had two surgeries—a quadruple bypass and the placement of a stent in his coronary artery—plus two prolonged hospital stays—from September 20 to November 28, 2005 and from January 7 to January 30, 2006, respectively. On December 30, 2005, Simmons petitioned the Board for workers' compensation benefits,[2] claiming that he was entitled to total disability benefits[3] for those two hospitalization periods. Employer contended that Simmons' heart attack was proximately caused by preexisting coronary artery disease, and therefore did not arise in the course of his employment.

The Board determined that Simmons' heart attack arose out of his employment, and awarded him compensation, together with attorney's and medical witness fees. Simmons later filed a motion asking the Board to clarify the amount of fees to which he was entitled. Employer, in response, filed a counter-motion for rehearing and reconsideration. The Board issued a decision wherein it: (1) clarified the amount of attorney's fees to which Simmons was entitled, (2) held that Simmons' stent placement was insufficiently related to his September 19 heart attack to be compensable (although it held that the coronary repair was sufficiently related), and (3) denied Zimmerman's motion for reconsideration.

Simmons later filed additional motions, in which he claimed that: (a) the stent placement was sufficiently related to his heart attack to be compensable and that (b) he was entitled to additional compensation for the disfigurement he suffered after his heart attack. In resolving these latter motions, the Board decided that the stent placement was a compensable work injury and that the Board would not address Simmons' disfigurement claim. The Board also approved a specific medical witness fee request. Employer appealed to the Superior Court from the Board's final order.

Employer advanced three claims before the Superior Court. First, it argued that the Board's decision was factually deficient because no substantial evidence supported its finding of a link between Simmons' employment and his injuries. Second, Employer argued that the Board's delay in rendering a decision after the May 11, 2006 hearing violated the workers' com-

---

1. The material facts are summarized from the Superior Court's decision. *Day & Zimmerman Security v. Simmons*, C.A. 06A–12–006 (Del.Super. May 16, 2008), also available at 2008 WL 2406448.

2. *See generally* 19 *Del. C.* § 2301 *et. seq.*

3. *See* 19 *Del. C.* § 2324.

pensation statute[4] and also exceeded the Board's jurisdiction. Third, Employer claimed that the Board erred as a matter of law by awarding Simmons excessive attorney's and witness fees. The Superior Court affirmed the Board's order in all respects.[5] On appeal to this Court, Zimmerman advances the identical claims.

### ANALYSIS

■ Where the Board's decision is supported by substantial evidence and is free from legal error, this Court will affirm.[6] "Substantial evidence" is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.[7] On appeal, we do not "weigh the evidence, determine questions of credibility, or make [our] own factual findings."[8] Those functions are reserved exclusively for the Board.[9] Adequate evidence to support the Board's decision should not be disturbed absent an error of law,[10] even if acting independently we would have reached contrary conclusions.[11] On review our primary function is to determine whether there is sufficient competent evidence to support the Board's findings. Thus, our review is effectively of the underlying Board decision, not the Superior Court's affirmance.[12] We review the Board's decision for abuse of discretion,[13] and overturn its factual findings only where there is no satisfactory proof.[14]

### I. The Board Had Substantial Evidence To Find For Simmons.

■ Zimmerman's challenge to the Board's factual findings is essentially an effort to reargue the facts. The Board was presented with inconsistent accounts of the events leading up to Simmons' heart attack. The Board also heard the testimony of doctors who had differing opinions of how (if at all) Simmons' preexisting heart problems contributed to his heart attack. It is unnecessary to address all of the contested factual Board determinations. The Board alone determines the weight and credibility of evidence, and its factual determinations will be overturned only where there is no satisfactory proof. Employer's objections to the Board's finding of fact essentially contest the Board's finding that Simmons' evidence was more credible and, thus, deserving of more weight. Only two of Zimmerman's objections are sufficiently colorable to warrant discussion.

---

**4.** 19 Del. C. § 2348(k) provides:

No later than 14 days after a hearing, the Board shall render a written decision that succinctly and clearly states its findings of fact and conclusions of law.... [W]here a decision cannot be reached in 14 days ... the Board shall [have no more than an additional 14 days to reach its decision.]

**5.** Day & Zimmerman v. Simmons, 2008 WL 2406448, at *1.

**6.** Histed v. E.I. DuPont deNemours & Co., 621 A.2d 340, 342 (Del.1993); Johnson v. Chrysler Corp., 213 A.2d 64, 66 (Del.1965).

**7.** Olney v. Cooch, 425 A.2d 610, 614 (Del. 1981).

**8.** Johnson, 213 A.2d at 66.

**9.** Downes v. State, 1993 WL 102547, at *2 (Del. March 30, 1993).

**10.** Blake v. State, 2002 WL 432026, at *1 (Del. March 12, 2002).

**11.** H & H Poultry v. Whaley, 408 A.2d 289, 291 (Del.1979).

**12.** Johnson v. Chrysler, 213 A.2d 64, 66 (Del. 1965).

**13.** Digiacomo v. Bd. of Publ. Educ., 507 A.2d 542, 546 (Del.1986).

**14.** Johnson, 213 A.2d at 64, 66.

■ First, the parties dispute whether the emergency or Simmons' heart attack occurred first. Each side produced testimony corroborating its version of the events. Zimmerman employees are required to prepare daily logs that note important events that occur during the workday. The Employer has possession and control over these logs, yet the logs for the day of Simmons' heart attack were missing, for reasons that Zimmerman could not explain. Because of the unexplained absence of the logs, the Board drew a negative inference against the credibility of Zimmerman's witnesses on the issue of which occurred first the emergency or Simmons' heart attack. In these circumstances, the Board's negative inference was reasonable and we uphold it.

■ Second, Employer claims that Simmons failed to establish proximate cause linking the work accident to his injury.[15] Employer relies heavily upon the fact that Simmons had a pre-existing heart condition. On that issue this Court has held:

[P]reexisting disease ... does not disqualify a claim for workers' compensation if the employment aggravated ... or in combination with the infirmity produced the disability ... [for] [t]he employer takes the employee as he finds him.[16]

Simmons' medical expert, Dr. Davis, testified that Simmons suffered from preexisting coronary artery disease, and that Simmons' exertion in responding to the emergency aggravated his preexisting heart problems and triggered the heart attack. That testimony is sufficient to establish that Simmons' workplace exertion was a substantial factor in causing his injury.

■ Employer next argues that Simmons should not have been awarded all the costs of his treatment and recovery, because his pre-existing illness would eventually have required treatment anyway. Employer claims that it should be liable only for the complications that were substantially related to the work-place injury. Whether or not a complication is substantially related to the work-place injury is an issue of fact. The Board originally declined to relate Simmons' stent placement to his heart attack, finding that such a link was too speculative. The Board later reversed itself and found that the stent procedure was compensable, based on Dr. Davis' testimony that Simmons' medical care (including the placement of a stent) was "reasonable, necessary, and related to the work accident." That testimony was sufficient evidence to support the Board's conclusion that Simmons' heart attack and the ensuing complications resulted from his workplace exertion and, thus, were compensable.

## II. The Employer Waived Its Claim That It Was Unfairly Prejudiced By The Board's Delay In Issuing Orders.

■ Employer claims that the Board acted contrary to law by issuing

---

**15.** See Steen v. State of Delaware, 1997 WL 33442119, at *2 (Del.Super. April 22, 1997) citing Reese v. Home Budget Center, 619 A.2d 907 (Del.1992). Steen is factually similar to this case. The employee had a pre-existing vascular condition and suffered a stroke at work while attending to his normal duties. Steen embraces the "usual exertion" rule of Duvall v. Charles Connell Roofing, 564 A.2d 1132, 1136 (Del.1989), which provides that an injury qualifies for workers' compensation coverage if the ordinary stress and strain of employment is a substantial factor in causing the injury. Here, Simmons (like Mr. Steen) had a preexisting medical condition, and the record supports the finding that the usual exertion of his employment was a substantial factor in causing further injury.

**16.** Reese, 619 A.2d at 910 citing General Motors Corp. v. McNemar, 202 A.2d 803, 807 (Del.1964).

orders after the statutorily required period following Board hearings. Employer relies on 19 *Del. C.* § 2348(k), which provides: "No later than 14 days after a hearing, the Board shall render a written decision that succinctly and clearly states its findings of fact and conclusions of law." In this case, the Board issued an order nine weeks after the initial hearing. After each additional hearing there were also significant delays, and only a few orders were issued promptly. Employer argues that this delay deprived the Board of its ability meaningfully to recall in detail the facts and the merits of the case, thereby prejudicing Employer. Stated differently, Employer urges that it had a statutory right to a speedy adjudication and that the Board's violation of that right requires that the entire case be re-heard *de novo*.

 Assuming without deciding that Employer had an enforceable right to prompt adjudication under 19 *Del. C.* § 2348(k), it waived that right. Claims that are not fairly presented at trial are waived.[17] Employer did not complain of any delay or otherwise give the Board notice of its position that the Board's delays were prejudicial to it. Without a proper objection before the original tribunal, the delay issue cannot be raised for the first time on appeal. Where the interests of justice require, this Court may choose to adjudicate a question not fairly presented at trial; however, this case does not warrant invoking that exception. In Zimmerman's own words, it was:

> [a]waiting what is hoped to be a favorable Decision from the Finder of Fact, to object to the lack of timeliness of the Board's Decision prior to being even

aware there is any prejudice, would be entirely unfair [sic].

That is, Employer decided to sit on its rights and gamble on a favorable adjudication. In addition, as the Superior Court noted, Zimmerman's legal maneuvering and its own filing of numerous motions contributed substantially to the delays.[18] These factors weigh against the application of Rule 8's "interests of justice" exception.

### III. The Board Properly Allowed Simmons To Recover His Expert Witness Fees.

 The Board granted a fee of $3,200 for Simmons' medical expert, Dr. Davis.[19] Before the Board, Employer argued that that fee was greater than what the Board usually grants and should be reduced. Although Dr. Davis was being awarded more than what the Board customarily grants for medical witnesses, the Board concluded that Dr. Davis' difficult specialty (cardiothoracic surgery) merited a higher fee. Employer failed to produce any evidence that the $3,200 fee was unreasonable or out of proportion to the fees typically charged by such specialists in Delaware. Therefore no basis to alter the Board's award of Dr. Davis' fees has been shown.

 Zimmerman argues that 10 *Del. C.* § 8906 and Delaware case law create a presumptive range for the level of compensation of medical experts, and that Dr. Davis' fee fell outside that presumptive range. This argument is incorrect for two reasons. First, 10 *Del. C.* § 8906 applies only to witnesses in the Superior Court, the Court of Common Pleas and the Court of Chancery. Fees for medical witnesses in workers' compensation cases are gov-

---

17. Del.Supr. Ct. R. 8.

18. *Day & Zimmerman Security v. Simmons,* 2008 WL 2406448, at *5 (Del.Super. May 16, 2008).

19. Pursuant to 19 *Del. C.* § 2322(e).

erned by Title 19. Second, before the Board Zimmerman made only a conclusory assertion that Davis' fee was excessive, and never referenced 10 *Del. C.* § 8906. As a result, this argument was also waived.

*IV. The Board Did Not Abuse Its Discretion By Awarding Attorney's Fees To Simmons.*

A claimant who receives an award of compensation becomes entitled to seek an award of reasonable attorney's fees.[20] Whether to award attorney's fees in workers' compensation cases is within the discretion of the Board.[21] If the Board decides to award attorney's fees, it must apply the factors described in *General Motors Corp. v. Cox*[22] to determine whether the requested fees are reasonable. The *Cox* factors are guidelines, not mandatory rules, and the record need only show that the Board considered the *Cox* factors in reaching its decision.[23] The claimant's attorney is required to (and Simmons' attorney did) file an affidavit that responds to the various *Cox* factors. The Board reviewed the affidavit, found that it satisfied

the *Cox* factors, and granted Simmons' attorney's fee request.

If that were all the information before us, the analysis would end at this point. Regrettably, however, Simmons' counsel filed an affidavit that was materially misleading in one respect. In response to question 10 whether fees and expenses have been or will be received from any other source counsel answered "no." In fact, however, counsel was also representing Mercy Fitzgerald Hospital, St. Francis Hospital, and Independence Blue Cross, which were seeking to recover payment for the various medical services they rendered to Simmons. Counsel stood to receive a one-third contingency fee from the hospitals and Blue Cross in addition to whatever fee the Board might grant. Because counsel did not disclose these additional fee arrangements to the Board, those arrangements were not considered in the Board's *Cox* analysis.[24]

Counsel argues that his relationship with the two hospitals was not formalized until after the Board held its first hearing

**20.** 19 *Del. C.* § 2320(10).

**21.** *Simmons v. Delaware State Hospital*, 660 A.2d 384, 389 (Del.1995).

**22.** *General Motors v. Cox*, 304 A.2d 55, 57 (Del.1973).

**23.** (1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly.
(2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.
(3) The fees customarily charged in the locality for similar legal services.
(4) The amount involved and the results obtained.
(5) The time limitations imposed by the client or by the circumstances.
(6) The nature and length of the professional relationship with the client.

(7) The experience, reputation, and ability of the lawyer or lawyers performing the services.
(8) Whether the fee is fixed or contingent.
(9) The Employer's ability to pay.
(10) Whether fees and expenses have been received or will be received from any other source.
*Cox*, 304 A.2d at 57.

**24.** It appears that the first time these outside representations came to light was on July 19, 2006 (after the Board's first order on July 11). Counsel sent a letter to Zimmerman demanding payment of all medical bills. Counsel advised Zimmerman that he was the legal representative for Mercy Fitzgerald and Independence Blue Cross and that payments for their medical bills should be sent directly to him. In the same letter, counsel requests Zimmerman to pay his Board ordered attorney's fees. Counsel subsequently informed Zimmerman that he was representing St. Francis on September 15.

on May 10. Even if that is true, a formal retention agreement existed between counsel and Blue Cross as of March 31, over a month before the initial Board hearing on May 10. That agreement was not disclosed. Counsel defends his behavior by arguing that the fee affidavit (which omitted to disclose these separate fee arrangements) was intended to obtain compensation solely for the work done on behalf of Simmons, apart from any work done on behalf of the hospitals and Blue Cross. It appears that the Superior Court accepted counsel's representation that his work for the health care providers and for Simmons were separate and distinct.[25]

Counsel did a commendable job at the Board level in establishing causation and obtaining a recovery for Simmons. Yet, establishing a causal link between Zimmerman and Simmons' injury (the core of Simmons' workers' compensation claim) was also required to enable the hospitals and Blue Cross to seek a recovery from Zimmerman.[26] In that sense, counsel would receive a double recovery for the same work. That would not necessarily defeat the fee application, because the Board could still, in the exercise of its discretion, award attorney's fees to counsel even if there was a potential for payment from other sources.

On November 9, 2006, the Board held a hearing at which both parties addressed the propriety of the fee arrangements. The Board, however, did not address the attorney's fees dispute in any of its subsequent written orders. We do not know why the Board, after learning of counsel's side arrangements, declined to alter its initial award of attorney's fees,[27] but as noted, the Board had the discretion to award counsel fees despite those side arrangements. That the Board did not subsequently alter his fee award after learning of these side arrangements suggests that the Board, in its discretion, still deemed the fee award appropriate.

Although counsel may have violated his duty of candor to the Board by filing a misleading affidavit, that violation, standing alone, does not require reversal of his attorney's fees award. Delaware courts have held that misconduct by an attorney may be grounds to deny a request for attorney's fees,[28] but a denial of attorney's fees does not automatically result. Although Zimmerman was entitled to object on the basis that Simmons' counsel stood to obtain payment from multiple sources, Zimmerman has failed to demonstrate that the Board abused its discretion in allowing such payments in this specific case.

### CONCLUSION

For the reasons set forth above, the judgment of the Superior Court upholding

---

**25.** *Day & Zimmerman Security v. Simmons,* 2008 WL 2406448, at *5 (Del.Super. May 16, 2008). "Nor do any of ... Zimmerman's concerns relative to agreements between [counsel] and health care providers have any bearing on the issues that were before the Board."

**26.** The representation agreements with the hospitals and Blue Cross noted that Simmons was counsel's primary client and that the agreement would not cover attempts to collect outstanding bills from Simmons.

**27.** Nor did the Superior Court specifically address the propriety of this fee award in light of the misleading nature of counsel's affidavit. The Superior Court simply declared that Zimmerman's concerns about the side arrangements had no bearing on the issues before the Board. *See Day & Zimmerman Security v. Simmons,* 2008 WL 2406448, at *5.

**28.** *Smith v. General Motors Corp.,* 1986 WL 217574, at *1 (Del.Super. January 29, 1986) citing *Dann v. Chrysler Corp.,* 215 A.2d 709, 717–18 (Del.Supr.1965) *af'd* 223 A.2d 384 (Del.Supr.1966).

the decision of the Industrial Accident Board is affirmed.