**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

JOYCE SCRUGGS, )
)
   Appellant, )
)
  v. )  C.A. No.: N25A-05-002 SSA
)
JUST FOOD FOR DOGS, )
)
   Appellee. )

Submitted: February 20, 2026
Decided: March 26, 2026

## MEMORANDUM OPINION AND ORDER

In deciding an Appeal from a decision of the Industrial Accident Board, this Court's role is limited. As will be more fully discussed below, this Court must examine the record in the light most favorable to Appellee, and its role is not to weigh evidence or make factual findings.[1] Instead, the Court must examine the record to determine if the Board's findings are supported by substantial evidence.[2] With these standards in mind, the Court affirms the Board's decision to reduce Scruggs' partial disability compensation and deny coverage for her proposed surgery.

Scruggs, who is now proceeding *pro se*, primarily asks the Court to reevaluate the factual record. This Court has carefully considered the entire record, as well as the parties' briefings and representations at oral argument. There is substantial

---

[1] *Johnson v. Chrysler Corp.,* 213 A.2d 64, 66 (Del. 1965).
[2] *Id.*

evidence supporting the determination that (1) surgery is not reasonable or necessary and (2) reduction in partial disability is warranted, given the work restrictions, Just Food for Dogs' demonstration of available jobs, and Scruggs' delay in applying for work.

### *Factual History*

In June of 2022, while employed as a sanitation supervisor for Just Food for Dogs ("JFFD"), Joyce Scruggs suffered injuries to her head, neck, and low back when "[s]he tripped over a cleaning hose, … fell backwards[,] and hit her head on … concrete."[3] Scruggs began receiving partial disability payments in 2023, which JFFD petitioned to reduce in July of 2024.[4] Scruggs petitioned separately for "payment of outstanding medical expenses as well as the approval of a proposed cervical fusion surgery[,]" which JFFD contested as not "reasonable, necessary or causally related to the June 2022 work accident."[5]

The Industrial Accident Board (the "Board") heard these petitions on January 9, 2025.[6] Scruggs framed the surgery, which would fuse her C4 through C7

---

[3] Tr., *Scruggs v. Just Food for Dogs*, IAB Hearing No. 1525692, at 13:14–17 (hereinafter "Tr."); *Scruggs v. Just Food for Dogs*, IAB Hearing No. 1525692 (Feb. 27, 2025), at 2 (hereinafter "Decision").

[4] Decision at 2.  Prior to receiving partial disability compensation, Scruggs previously received total disability payments.  D.I. 22, Ex. 1.

[5] Decision at 2.

[6] *Id.*

vertebrae, as remedying myelopathy.[7] She also questioned returning to work, given her view that "the surgery is imminent."[8] But Drs. Townsend and Piccioni, who testified for JFFD, viewed the surgery as not necessary. Scruggs' experts, Drs. Lingenfelter and Sampathkumar, testified in its favor; however, Dr. Lingenfelter agreed the surgery was not necessary for Scruggs to return to work.[9]

Dr. Riley testified as JFFD's vocational expert and prepared a labor market survey ("LMS") of twenty-five sedentary positions.[10] Each medical expert cleared Scruggs to work those jobs.[11] Dr. Riley verified the positions' availability and the employers' equal treatment of "someone with [Scruggs'] background and medical capabilities…."[12] The week before the hearing, Dr. Riley contacted the employers and noted fourteen positions were still available.[13] However, Scruggs "testified that when she reached out to the [employers] in November 2024, there were only five [positions] available."[14] She logged around fifteen applications in November, as

---

[7] Tr. at 13; Decision at 25–27. Radiculopathy and myeloradiculopathy were also at issue. Decision at 13, 18, 27, 42. For context, "[m]yelopathy is pinching of the actual spinal cord itself[,]" while "radiculopathy is pinching of the nerve root." *Id.* at 25.
[8] Tr. at 13:25–14:1.
[9] Tr. Lingenfelter, at 82:9–11.
[10] Decision at 6–7.
[11] Tr. at 12:12–16.
[12] Decision at 7.
[13] *Id.* at 8.
[14] *Id.*

well as one in December, despite testimony suggesting she first received the LMS in May.[15]

On February 27, 2025, the Board granted JFFD's petition and denied Scruggs' petition.[16] She subsequently appealed the Board's decision.[17] In August of 2025 Scruggs' counsel withdrew;[18] she has since proceeded *pro se*.

### *Standards of Review*

### *Substantial Evidence and* De Novo *Review*

Appellate "review of the Board's decision is confined to an examination of the record for errors of law and a determination of whether substantial evidence exists…."[19] To that end, "[e]vidence is 'substantial' if a reasonable person could accept it as adequate to support a finding of fact."[20] Accordingly, this Court "may only overturn a factual finding of the Board when there is no satisfactory proof in

---

[15] *Id.* at 4–5; Tr. Scruggs, at 18:22–19:4; Employer's Ex. No. 1, *Scruggs v. Just Food for Dogs*, IAB Hearing No. 1525692.

[16] Decision at 41–42, 46. The Board allowed coverage for "any outstanding treatment expenses at issue during this hearing outside of that specifically meant to address cervical myelopathy and cervical radiculopathy…." *Id.* at 41. Also of note, in April the Board amended language within its decision. Attorneys for Employer and the Workers' Compensation Fund stipulated that "Employer is only required to reimburse the Fund at the new partial disability rate of $103.79 per week during the period the Fund paid partial disability benefits." Apr. 8, 2025 Decision of Industrial Accident Board, D.I. 22, at 1. Pre-revision, the sentence read: "there is no reimbursement due by JFFD to the Workers' Compensation Fund." *Id.*

[17] Notice of Appeal, D.I. 1.

[18] Notice of Withdrawal of Representation, D.I. 10.

[19] *Smith v. Peninsula Oil & Propane*, 2012 WL 5462856, at *1 (Del. Super.) *citing Histed v. E.I. Du Pont de Nemours & Co.*, 621 A.2d 340, 342 (Del. 1993). "Questions of law that arise from the Board's decision are subject to *de novo* review which requires the Court to determine whether the Board erred in formulating or applying legal precepts." *Lawhorn v. New Castle Cnty.*, 2006 WL 1174009, at *2 (Del. Super.) (citations omitted).

[20] *Drainer v. Heating Oil Partners*, 2013 WL 3871412, at *5 (Del. Super.) (citations omitted).

favor of such a determination."[21] Further, the Court "must view the record in the light most favorable to the prevailing party below[,]"[22] and it "will not weigh the evidence, determine questions of credibility, or make its own factual findings."[23]

### Issues Eligible for Review

As noted above and discussed at oral argument, the law imposes limitations on what issues can be considered on appeal. First, the "Court may consider an issue on appeal from an agency's decision only if the appellant raised the issue before the agency[.]"[24] Second, the "opening brief [must] *fully* state the grounds for appeal, as well as the arguments *and supporting authorities* on each issue or claim[,]" such that "[t]he failure to cite *any* authority in support of a legal argument constitutes a waiver of the issue…."[25] A third, related framework: "[c]ourts may disregard or deem waived any arguments made in a reply brief … not raised in the opening brief."[26]

---

[21] *Wyatt v. Rescare Home Care*, 81 A.3d 1253, 1259 (Del. 2013) *citing Steppi v. Conti Elec., Inc.*, 991 A.2d 19, at *2 (Del. 2010). In essence, the Court does not function here "as an administrative agency of superior rank." *Morris v. Dep't of Correction*, 1998 WL 283478, at *1 (Del. Super.) *citing Delaware v. Berenguer*, 321 A.2d 507 (Del. Super. Ct. 1974).

[22] *Wyatt*, 81 A.3d at 1258–59 *citing Steppi*, 991 A.2d 19, at *3.

[23] *Person-Gaines v. Pepco Holdings, Inc.*, 981 A.2d 1159, 1161 (Del. 2009) *citing Johnson v. Chrysler Corp.*, 213 A.2d 64, 66–67 (Del. 1965).

[24] *Drainer*, 2013 WL 3871412, at *8 (citations omitted). The doctrine of exhaustion of administrative remedies is not absolute. *Eckeard v. NPC Int'l, Inc.*, 2012 WL 5355628, at *2 (Del. Super.) *citing Levinson v. Del. Comp. Rating Bureau, Inc.*, 616 A.2d 1182, 1190 (Del. 1992); *Berchock v. Council on Real Est. Appraisers*, 2001 WL 541026, at *4 (Del. Super.) (citation omitted). However, none of the circumstances warranting exception are apparent here. *See generally Eckeard*, 2012 WL 5355628, at *2–3 (citations omitted) (discussing means for overcoming the "strong presumption in favor of requiring exhaustion").

[25] *Flamer v. State*, 953 A.2d 130, 134 (Del. 2008) (citations omitted) (emphasis in original). And in the first place "[t]he notice of appeal … shall state the grounds of the appeal…." Super. Ct. Civ. R. 72(c).

[26] *Ethica Corp. Fin. S.r.L v. Dana Inc.*, 2018 WL 3954205, at *3 (Del. Super.) (citations omitted).

With those standards in mind, "[t]here is no different set of rules for *pro se*" litigants.[27]  To be sure, "[w]ithout relaxing procedural requirements, the Court may grant a *pro se* party leeway…."[28]  "But *pro se* litigants shoulder responsibility too[,]" since "[a]ccuracy and honesty matter" and "a legal filing constitutes a representation to a court…."[29]

### *Petition to Determine Additional Compensation Due*

The Delaware Code addresses an employer's furnishing of certain "services, medicine and supplies" while a claimant is disabled.[30]  But the Code does not "require[] the employer to pay" for "treatment which … [is not] reasonable or necessary…."[31]  The issue of "[w]hether medical services are necessary and reasonable" is a "purely factual issue" reserved for the Board.[32]  Moreover, "[t]he Board is free to accept the testimony of one medical expert over that of another."[33]

### *Petition to Review Partial Disability Compensation*

Partial disability compensation is governed by 19 *Del. C.* § 2325: "[f]or injuries resulting in partial disability for work, … the compensation to be paid shall be 66 $^2/_3$ percent of the difference between the wages received by the injured

---

[27] *Kiefer v. UKSP, LLC*, 2025 WL 2527862, at *2 (Del. Super.) *quoting Draper v. Med. Ctr. of Del.*, 767 A.2d 796 (Del. 2001).

[28] *Tolliver v. Del. Futures, Inc.*, 2020 WL 6588496, at *1 (Del. Super.).

[29] *Jones v. Kankakee Cnty. Sheriff's Dep't*, 164 F.4th 967, 970, 971 (7th Cir. 2026).

[30] 19 *Del. C.* § 2322(a).

[31] *Bullock v. K-Mart Corp.*, 1995 WL 339025, at *3 (Del. Super.).

[32] *Id.* (citations omitted).

[33] *Id.* (citations omitted).

employee before the injury and the earning power of the employee thereafter…."[34]

It is "uniquely within the function of the Board" to employ its "specialized knowledge and experience" for "the calculation of such benefits…."[35]

### *Analysis*

### *Scruggs' Contentions*

Scruggs asserts that "the Board misapplied the law governing light duty and employability, misinterpreted medical standards for surgical necessity, … [and] improperly relied on behavior as medical evidence…."[36] As for errors involving the factual record, the Board purportedly "ignored critical medical evidence[] [and] witness statements…."[37] Next, "[t]he Board erred by relying heavily on employer-selected evaluations and disregarding substantial facts supporting [Scruggs'] ongoing medical limitations and credibility."[38] And as for Scruggs' partial disability reduction, she also disputes Dr. Riley's testimony and the LMS.[39]

### *Arguments Waived*

---

[34] 19 *Del. C.* § 2325.

[35] *Briggs v. DuPont*, 1998 WL 110037, at *12 (Del. Super.) (citations omitted).

[36] Appellant's Reply Br., D.I. 23, at 20.

[37] Appellant's Opening Br., D.I. 18, at 7.

[38] *Id.* In Scruggs' view of the physicians' opinions, "the record shows multiple contradictions"; similarly, the Board did not "evaluate the combined effects of seven … medications" she takes. D.I. 23, at 20, 32.

[39] D.I. 18, at 10.

The above recitation is not exhaustive.[40] Scruggs also discusses: (1) the ignored value of a discogram and a second opinion on the surgery,[41] (2) Dr. Townsend's qualifications,[42] (3) her status as a displaced worker,[43] and (4) the absence of certain evidence at the hearing.[44] However, Scruggs does not show where she raised these issues below, and there is no indication she moved for re-argument as she suggests; these issues are thus waived on appeal to this Court.

Scruggs stresses that the Board "violate[d] principles of timely adjudication" by issuing a decision two months post-hearing.[45] *Day & Zimmerman Security v. Simmons* is dispositive on that front: there, the Supreme Court did not decide whether the employer "had an enforceable right to prompt adjudication under 19 *Del. C.* § 2348(k)," given that the employer "waived that right."[46] Namely,

---

[40] In short, "[i]t is unnecessary to address all of the contested … determinations"; the Court will review "[o]nly … [those] objections [that] are sufficiently colorable to warrant discussion." *Day & Zimmerman Sec. v. Simmons*, 965 A.2d 652, 656 (Del. 2008).

[41] D.I. 23, at 24–25, 35. Scruggs raised these two issues only in her Reply Brief.

[42] *Id.* at 31. *But see DiSabatino Bros. v. Wortman*, 453 A.2d 102, 106 (Del. 1982) (citations omitted) ("[A]n experienced practicing physician is an expert, and it is not required that he be a specialist in the particular malady at issue in order to [admit] his testimony as an expert….").

[43] She concludes that "[g]iven [her] prescribed medication, ongoing pain, and open Workers' Compensation claim, she qualifies as a displaced worker under Franklin Fabricators v. Irwin." D.I. 18, at 10. To the extent the parties discussed the displaced worker doctrine, only JFFD's counsel briefly referenced it in his closing argument. Tr. at 114:19–24. Since Scruggs did not discernably raise it before the Board, this argument is waived. *See Elswick v. B.F. Rich Co.*, 1998 WL 960743, at *4 (Del. Super.) ("Claimant would have to claim that she is a displaced worker or abandon that position."); *Campos v. Daisy Constr. Co.*, 107 A.3d 570, 574 n.7 (Del. 2014) (emphasis in original) (deeming displaced worker doctrine irrelevant in appeal "challeng[ing] the Board's finding that [claimant-appellant] was ineligible for *partial* disability benefits.").

[44] D.I. 18, at 11.

[45] *Id.* at 10. *See generally* 19 *Del. C.* § 2348(k) (timeframe for Board to render decision).

[46] *Day & Zimmerman Sec. v. Simmons*, 965 A.2d 652, 658 (Del. 2008).

"[w]ithout a proper objection before the original tribunal, the delay issue cannot be raised for the first time on appeal."[47]  Here there was similarly no objection.[48]

### *Partial Disability Compensation*

Also waived are Scruggs' partial disability arguments.  She focuses primarily on whether she can return to work and whether the LMS demonstrates available employment.[49]  Yet in her Notice of Appeal she did not specify that the Board's partial disability decision formed a basis for this appeal.[50]  Moreover, the Court has not located—and Scruggs has not pointed to—her objection on these issues before the Board.[51]  True, she noted only five LMS positions were available in November.[52]  That argument has been expanded before this Court: she argues that the LMS comprised "clearly outdated job listings[,]" and "[t]he Board improperly relied on speculative vocational evidence" which amounted to "false vocational evidence…."[53]  She stipulated to Dr. Riley's qualifications,[54] and she did not object

---

[47] *Id.* 658 (citation omitted).

[48] And as for Scruggs' grievance with her counsel-below's performance, *see* D.I. 23, at 27, "a client is bound by the acts of [her] retained attorney."  *Sbriglia v. Rusten*, 1994 WL 682629, at *2 (Del. Super.) (citations omitted).  *See also Active Day OH, Inc. v. Wehr*, 2024 WL 3201167, at *7 (Del. Super.) ("Attorneys serve as agents of their clients.").

[49] D.I. 18, at 9–10, 12.

[50] Superior Court Civil Rule 72 requires that "[t]he notice of appeal … specify … the order, award, determination, or decree, or part thereof appealed from" and that the notice "state the grounds of the appeal…."  Rule 72(c).

[51] "A question is fairly presented when the trial court 'understands it is an argument that must be considered and decided' or 'understood and addressed the argument being made on appeal.'" *Suber v. State*, 2026 WL 184867, at *4 (Del.) (internal footnote omitted) (citation omitted).

[52] Tr. Riley, at 40:2–6.  *See also* Employer's Ex. No. 1, *Scruggs v. Just Food for Dogs*, IAB Hearing No. 1525692.

[53] D.I. 18, at 12.

[54] Tr. at 32:5–6.

to the LMS or to the doctors' unanimous testimony that she can return to sedentary-duty work.[55]  Those specific issues were not preserved.  Regardless, the Board's decision on this point is supported by substantial evidence and without legal error.[56]

By way of background, a partial disability claimant must have "a continued disability … [which] could reasonably affect" her earning power.[57]  There must also be a decrease in that earning power.[58]  The earning power inquiry involves available employment[59] and "post injury wages, after a reasonable effort to fulfill one's earning potential…."[60]  Where diminished income is not attributable to the injury—

[55] Further, her attorney stated, "whether or not [Scruggs] can work is non-issue [sic] at this point because the surgery is imminent." *Id.* at 13:24–14:1.

[56] The Board properly applied governing standards.  For instance, it required "JFFD [to] show that [Scruggs'] entitlement to partial disability benefits has diminished because there is evidence of a continuing disability…." *See* Decision at 43 *citing Waddell v. Chrysler Corp.*, 1983 WL 413321, at *3 (Del. Super.).  *Cf. Campos v. Daisy Constr. Co.*, 107 A.3d 570, 574 (Del. 2014) (citation omitted) ("The employer must also prove that the claimant is not partially disabled when the evidence demonstrates 'that in spite of improvement, there is a continued disability' that 'could reasonably affect … earning capacity.'").

[57] *Waddell*, 1983 WL 413321, at *3.  Boiled down, "[p]artial disability is the 'period of time in which an injured employee suffers a partial loss of wages as a result of his [or her] injury.'" *Holben v. Pepsi Bottling Ventures, LLC*, 2018 WL 6603792, at *3 (Del. Super.) (second alteration in original) *quoting Globe Union, Inc. v. Baker*, 310 A.2d 883, 887 (Del. Super. Ct. 1973).

[58] *Holben*, 2018 WL 6603792, at *3 *citing* 19 *Del. C.* § 2325.  "Earning power" is interchangeable with "earning capacity" in this context. *Id. citing Ruddy v. I.D. Griffith & Co.*, 237 A.2d 700, 703 (Del. 1968).  However, "actual earnings are not synonymous with 'earning power' under" section 2325.  *Allen v. Megee Plumbing & Heating*, 1996 WL 453351, at *3 (Del. Super.) *citing Ruddy*, 237 A.2d at 703.

[59] *Globe Union, Inc.*, 310 A.2d at 887 *citing Ham v. Chrysler Corp.*, 231 A.2d 258 (Del. 1967). *See also Campos*, 107 A.3d at 575 (citations omitted).

[60] *Holben*, 2018 WL 6603792, at *5.

i.e., where it instead stems from the claimant's conduct—it is not considered a loss in earning power.[61]

Substantial evidence supports the Board's findings on these issues. All four medical experts agreed that Scruggs can undertake sedentary-duty work.[62] In turn, Dr. Riley's expert testimony and the LMS (which the Board may rely upon)[63] indicated that jobs were available.[64] Yet Scruggs apparently did not avail herself of such jobs. She stated "she had not received a list of all of the jobs in May 2024[,]" but she also "admitted that … the LMS jobs might have been in the packet given to her [in May]."[65] Further, her conduct—only documenting applications nearly six

---

[61] *See Allen*, 1996 WL 453351, at *4. In *Allen* the claimant took part-time work despite his capacity for full-time work. *Id..* The Court reflected, "[the claimant] did not take all the jobs that were available to him and was unable to offer medical testimony … that he was physically incapable of working a forty hour week." *Id. See also Joynes v. Peninsula Oil Co.*, 2001 WL 392242, at *5 (Del. Super.) (discussing claimant's "inadequate job search").

[62] Decision at 15; Tr. at 48:18–22, 55:13–17, 81:16–20, 90:5–11.

[63] *See Holben*, 2018 WL 6603792, at *6 (discussing "the Board's discretion to rely upon a labor market survey when determining earning power."); *Johnson v. Canalfront Builders, LLC*, 2024 WL 862442, at *4 (Del. Super.) (citation omitted) ("The Board's acceptance of expert testimony … qualifies as substantial evidence….").

[64] Scruggs invokes *Torres v. Allen Family Foods*, 672 A.2d 26 (Del. 1995) for the proposition "that the employer must show actual job availability within a claimant's restrictions…." D.I. 18, at 12. True, a showing of theoretical availability will not succeed "for employers seeking to meet their burden to terminate benefits[,]" meaning that Delaware courts require "reliable evidence that jobs are in fact available…." *Campos*, 107 A.3d at 576, 577. Here, though, Dr. Riley testified about her efforts to ascertain continued availability. Tr. Riley, at 38:15–23 (contacted at time of advertisement); *id.* at 43:6–44:11 (contacted week prior to hearing). Such testimony reliably shows availability. *See Canalfront Builders, LLC*, 2024 WL 862442, at *4 (citation omitted); *Guy v. Delaware*, 1996 WL 111116, at *5 (Del. Super.) ("[F]actors such as visiting and speaking with employers tend to prove that the vocational expert did not base his opinion on speculative evidence.").

[65] Decision at 4. In the Board's view, she also signaled "she intended to look for work after surgery and planned to search for jobs that paid more than the LMS positions." *Id.* at 44; Tr. Scruggs, at 21:19–23, 107:23–108:03.

months after JFFD's petition—did not suggest a reasonable effort.[66]  There was satisfactory proof to support the Board's finding on this issue.

### *Proposed Surgery*

That leaves the proposed surgery.  To reiterate: the question of whether a surgery is reasonable, necessary, and causally related is a "purely factual issue within the purview of the Board."[67]  Where the Board is more convinced by an expert's testimony against surgery, the Court will not reassess that testimony's weight or credibility.[68]  Instead, the Court's core concern here is "whether there is a proper evidentiary basis for the decision."[69]

A proper evidentiary basis lies where the Board "demonstrate[s] that its opinion was based on an adequate weighing of the evidence."[70]  It did so here.  Over more than five pages, it weighed varying testimony and "found Dr. Townsend's and Dr. Piccioni's opinions to be more convincing."[71]  That finding centered on four

---

[66] To be clear, 19 *Del. C.* § 2325 "does not require a claimant to secure employment in order to receive partial disability benefits."  *Gen. Motors Corp. v. Stewart*, 2011 WL 4638775, at *6 (Del. Super.).  Instead, "a Claimant need only demonstrate that he or she is actively seeking employment elsewhere to be eligible for ongoing benefits."  *Id.* (citations omitted).

[67] *Bullock v. K-Mart Corp.*, 1995 WL 339025, at *3 (Del. Super.) (citations omitted).

[68] *See Canalfront Builders, LLC*, 2024 WL 862442, at *4 (citation omitted).

[69] *Sweeney v. Wal-Mart*, 2013 WL 3975149, at *5 (Del. Super.) (alteration to punctuation) *quoting Lindsay v. Chrysler Corp.*, 1994 WL 750345, at *3 (Del. Super.).

[70] *Id. citing Glanden v. Land Prep, Inc.*, 918 A.2d 1098, 1103 (Del. 2007).  This demonstration is especially important "where there is substantial medical evidence and the experts disagree…."  *Id. quoting Glanden*, 918 A.2d at 1101.  For example, as opposed to "'a single, conclusory paragraph[,]'" a sufficient opinion "'included over five pages of well reasoned findings of fact and conclusions of law' that specifically addressed the relevant medical issue."  *Id. quoting Glanden*, 918 A.2d at 1101–02.

[71] Decision at 37.

points: Scruggs' examinations lacked objective signs of myelopathy;[72] her pain reports were disproportionate;[73] the surgery carried serious risks;[74] and her conduct undercut "the notion that the proposed surgery is reasonable or necessary…."[75]

Since Dr. Lingenfelter intended for the procedure to address myelopathy, Dr. Piccioni discussed "objective symptoms that should be present with cervical myelopathy…."[76] These indicators were not present in Scruggs' evaluations.[77] Dr. Piccioni also "testified that … the diagnostic studies … typically should show spinal cord compression and myelomalacia."[78] But "there was no myelomalacia present" in Scruggs' September 2022 or August 2024 MRI, and Dr. Piccioni did not notice degenerated myelom, another myelopathy indicator.[79]

The most recent MRI "strengthen[ed] [Dr. Piccioni's] opinion";[80] namely, it "showed no progression of spinal cord compression or any myelomalacia…."[81] Dr.

---

[72] A sign is "an objective finding[,]" whereas a symptom is "a subjective indication[.]" Piccioni Dep., IAB Hearing No. 1525692, at 6:14–21. According to Dr. Piccioni, "when subjective complaints, objective testing and clinical studies do not match, the chance of success of the operation is extremely poor." Decision at 16.

[73] Decision at 41.

[74] *Id.* at 15. The surgery would impact "around 70 percent of her neck function[,]" other vertebrae "would be at risk for further degeneration[,]" and Scruggs "would be painted into a corner of what she would be capable of doing." *Id.* at 17–18.

[75] *Id.* at 39.

[76] *Id.* at 37. *See also id.* at 18.

[77] She did not have "hyperreflexia, winging of the scapula, spasm and reflex changes[,]" or atrophy. *Id.* at 37. Nor did she respond to certain provocative tests. *Id.*

[78] *Id.* at 38.

[79] *Id.* at 38, 39.

[80] *Id.* at 20.

[81] *Id.* at 39. Similarly, treatment a few weeks following her accident "did not show any evidence of cervical radicular symptoms." *Id.* at 12.

Piccioni did identify "some evidence of contact with the spinal cord" at the C3–4 level, but it was "in the area of the C4 nerve which affects the diaphragm…."[82] The proposed surgery did not involve that area, which "Dr. Piccioni felt … made little sense…."[83]

Scruggs' conduct also influenced the Board's decision when it found she did not comply with presurgical requirements. For instance, nicotine cessation is necessary for a successful surgery. Dr. Piccioni noted he "would not find it reasonable to perform even a single level fusion while the patient is taking in any nicotine product[,]" and "each time another level of fusion is added the chance of one of those levels not using [sic] goes up."[84] Consequently, "[i]t would be most critical in a four level fusion that the patient is not on any nicotine product for at least three months prior to considering surgery."[85]

As far as that goes, Scruggs "testified … she had quit smoking in April 2024."[86] But "Dr. Lingenfelter testified that she had told him in December 2024 that she was still smoking five cigarettes per day…."[87] Ultimately, "the Board was not

---

[82] *Id.* at 39.
[83] *Id.*
[84] *Id.* at 17. Presumably the Board meant to say 'fusing' instead of 'using' here. *See* Piccioni Dep., IAB Hearing No. 1525692, at 38:2–20.
[85] Decision at 17.
[86] *Id.* at 40.
[87] *Id.* Dr. Lingenfelter's deposition contained the following exchange:
    Q. According to your December 11th, 2024 note though it states that she continues to smoke up to five cigarettes per day?
    A. Yes. She told me she smoked some cigarettes but has, quote, unquote, quit[.]

convinced that [Scruggs] would stop smoking prior to the surgery[,]" which in turn "indicat[ed] that the proposed surgery is not reasonable or as necessary … as she maintains."[88]  And since she had not obtained a second opinion at the time of Dr. Lingenfelter's deposition—as "is required under the Delaware Health Care Practice Guidelines for any surgery above a two-level fusion"[89]—the Board considered this as additional evidence that the surgery was not necessary.  At oral argument, Scruggs protested some of these facts.  This Court is not in a position to determine questions of credibility or make its own factual findings.

Scruggs contends that "[e]mployer-selected evaluators were given disproportionate weight[,]" which "[t]he Board failed to balance … with [her] treating specialists"; further, the Board allegedly relied on Dr. Piccioni's opinion "without explanation[,]" thereby "demonstrat[ing] selective credibility determination and bias."[90]  Under her account, JFFD "sent [Scruggs] to Dr. Townsend, who supported surgery, then immediately to Dr. Piccioni, who did

---

Lingenfelter Dep., IAB Hearing No. 1525692, at 46:18–24.  *See also id.* at 46:18–48:08.

[88] Decision at 40, 41.

[89] *Id.* at 17.  The Board seemingly viewed it to indicate a lack of diligence.  *Id.* at 39.

[90] D.I. 18, at 9, 11.  *But see* Decision at 37–39 (specifically addressing Dr. Piccioni's assessment).

not...."[91]  But the record does not show that.[92]  Dr. Townsend testified, and the Board ultimately agreed, that the "proposed surgery is not necessary...."[93]

### *Conclusion*

The record supports the Board's findings.  In determining the proposed surgery's reasonableness and necessity, the Board properly relied upon expert testimony which identified a lack of physical findings and objective measures for the conditions at issue.  The Board also made credibility findings, supported by substantial evidence, relating to Scruggs' adherence to preconditions for this proposed surgery.  Further, the Board's reduction of partial disability compensation was legally sound: Scruggs is medically capable of returning to work, and the LMS demonstrated available employment.  The Board's decision is AFFIRMED.

**IT IS SO ORDERED.**

**/s/Sonia Augusthy**
Judge Sonia Augusthy

---

[91] D.I. 18, at 11.  *See also* D.I. 23, at 30–31.
[92] Perhaps Scruggs references Dr. Townsend's view that her *previous* treatment was "reasonable and necessary in relation to the work injury."  Decision at 20.  *See also id.* at 42; Townsend Dep., IAB Hearing No. 1525692, at 25:17–26:3.
[93] Decision at 10.  *See also id.* at 17, 37.